' Lipscomb, J.
Mrs. Wilson is not a party to this suit, and her rights cannot be adjudicated in this case, but that site may be indirectly affected by the construction we may give to the homestead law is undeniable. We shall, however, not extend the discussion on that law beyond the absolute necessiiy imposed on us in deciding on the correctness of the judgment under consideration.
The statement of facts shows that the charge may have had a material influence on the jury in linding their verdict, and we will proceed to inquire into its correctness.
What is generally known as the homestead law of our State is defined by the 22d section of the general provisions in our State Constitution, (Hart. Dig., p. 73,) and the mode in which the homestead can he conveyed, in Hart. Dig., arts. 174, 175, and 170. That tile interest and the protection of the wife entered largely into the consideration that induced the provision in our Constitution protecting the homestead there cannot be the smallest doubt; that site should have an asylum from which the creditor by the process of the law could not force her and her children, and rudely drive them from a home sanctified by so many sweet and endearing recollections, to become homeless and house-less wauderers, to be exposed not only to physical suffering but also to the more baneful and blighting influences so often and so successfully brought to bear on the unfortunate, when necessity and not the will consents to infamy. Protect the home of the wife, and the opportunity is in some measure afforded her by frugality and honest industry to support herself and children, and to prevent some of the worst calamities that the profligacy of the husband would bring on them. These were doubtless some of the considerations that influ- *158 euced the framers of our Constitution in ingrafting the homestead protection as a cardinal law of the land.
There were, however, other considerations that would not he overlooked by wise philanthropists and philosophic minds, accustomed to look deep into the sources of all those evils and vices that so canker and corrode society. Ascending those streams to their sources it will he, found that by far the greatest part, take, their rise, not in self-existing crime, hut in misfortune incidental to the condition of man. To illustrate the truth of this proposition, we will present tlie ease of a debtor — one too common indeed, lie encounters the stroke of misfortune; whether induced by his own imprudence, unreasonable calculations, or from a cause entirely beyond the reach of anv agency of his own, it is all the same. Stupilie.d by the blow, lie looks around him; lie beholds with anguish the penury and want to which hi,3 wife and children are reduced, suffering, perhaps for the necessaries of human life. It is in vain that he can look for one spot as a place of refuge, where he can take his stand and by industry honestly gain a support for his family, and indulge the hope of retrieving- his misfortunes unmolested by the unrelenting- pursuit of his creditors; all tliat he then possesses, all the labor of his hands, all his future acquisition, is lawful prey; aided by the law they give him 110 repose; even the most ordinary morsel of food procured by the sweat of the parent’s brow becomes the property of the creditor and is snatched from the lips of the child. Bo beset, can the man is it in his nature to he capable of moralizing and cherishing unflinchingly the principles of morality and honesty? 5io 1 He looks upon man as his enemy, and all their municipal regulations as only intended 10 be instruments in the hands of his persecutors, and tile administrators of Lhe law as worse than the Egyptian taskmasters, that with their unceasing- exactions, they withdrew the means of responding to them. The laws afforded him no protection, and, to his harassed feelings,'were cruel, vindictive, and oppressive, placing him, from their harshness, iu antagonism with them. Under such circumstances he easily yields to the temptation, and iiis first efforts may be at. what would be a fraud in concealing something from his creditors; and he would go from step to step, and finally fall into the stream and float with it down to the great ocean of crime,. If the law had afforded any sort of protection by whiclí, with honest, industry, he could have supported himself and family by his labor without having it snatched from them, iie would not have been tempted, and would not have soured and contaminated his family and associates by his vices. The laws should punish crime, but not misfortune; the latter should be protected; and should not permit the unfortunate to ha treated as animals, and hunted down, by the aid of the law, as culprits. Whe.ro this is not done, some of the most benevolent hearts are driven, by such omissions and defects in the law, into ultraisni. socialism, and Fourierism, and an opposition to all municipal regulations. Hence the profound wisdom of our liomestead law. It is natural for the unfortunate to be grateful to those from whom they receive aid in their affliction, and they will love and venerate, the laws when they protect misfortune, and not force them into the class of culprits. The homestead is a point from which they can start, relieved from any fear of then- families being turned out without a home, and can commence again, Auteus-likc, with renewed energy and strength and capacity for business, from their fall, nn«calhed by temptation and, from experience, more practical and useful members of society. With (he homestead protection thrown around him, the husband may well exclaim, I am a king and my wife is a queen, and our domain is our home that none dare invade.
Profoundly impres--ed with the wisdom in which our homestead policy is founded, and fully impressed with its ameliorating influences, we admit that it is entitled to the most liberal construction for the accomplishment of its object. Yet we are far from yielding our sanction to the proposition contained in the charge of the court as presented by the bill of exceptions. When the harmony of the matrimonial relations lias been destroyed, and the wife has voluntarily withdrawn from the narrow but sacred precincts of that *159 itotm1 in which she was protected by the law, and left the State and domicil-iated in another State, and is no longer found a priestess ministering at the household altars, that she should claim the protection of the homestead law is so very repugnant to the beneficent designs it contemplates that we must dissent from its correctness, as neither within the spirit nor the letter of the law. Had she left (lie State under circumstances that would have disgraced and branded her with infamy, according to the charge, she could, from her new domicile in a foreign laud, after I lie, death of the husband she liad abandoned. claim the homestead, and thus convert what was in tended for the holiest purposes to a mere speculation. I am glad, for her credit, that tlie verdict of the jury relieves her from the charge of having left the State under such circumstances; but tlie record leaves the inference that she is not a citizen of this State, but that she sued as a citizen, of Georgia. If so, she is as completely deprived of the homestead privilege as if she had acquired a new one in this State; and the eiiarge of the judge, that she conld not lose it without having acquired a new one in this State, is erroneous. It is not true that our law would continue sueli a privilege after she had withdrawn from the jurisdiction of tlie State and domiciliated in another; it would be perverting the common understanding of the term homestead. Because, therefore, that the judge erred in his charge to the jury on this subject, the judgment must be reversed and the cause remanded.
Noíe 65. — Earle v. Earle, 9 T., 038; Meyer a. Claus, 15 T., 516; Lacey ». Clements, 36 T., 661.
Reversed and remanded,