A. B. GARDNER AND WIFE v. E. G. DOUGLASS ET AL.

(Case No. 5307.)

1. HOMESTEAD.— A lot on which stood a dwelling-house was purchased nearly three months before the expiration of a lease to a third party, who continued to occupy it until the expiration of the lease. The purchaser declared his intention to his wife, and to no one else, to make the property his homestead, and it appeared that he could not obtain possession before the expiration of the lease. On the expiration of the lease he removed to and occupied the dwelling-house. An injunction was obtained to restrain the sale of the property under execution issued on a judgment which was rendered against the purchaser before the date of his purchase. Held:

(1) That the property was protected by the statute exempting the homestead from forced sale.

(2) That the injunction should have been perpetuated.

APPEAL from Grayson. Tried below before the Hon. Richard Maltbie.

Suit was instituted by appellants, A. B. Gardner and wife, on the 5th day of November, 1883, in the district court of Grayson county, against appellees, E. G. Douglass, sheriff, and Marx & Kempner, to enjoin the sale of lot 20 in block 48, Denison, Texas, under execution issued from Galveston county, in favor of said Marx & Kempner against A. B. Gardner, on the ground that the property was the homestead of appellants; that it was purchased in part with the proceeds of the sale of a former homestead of Gardner and wife; and that it was purchased in part with the separate property of the

wife, Louisa H. Gardner. The case was tried before the district judge without a jury. Judgment was rendered dissolving the injunction, and directing an order of sale to be issued to the sheriff to sell the property, and out of the proceeds to pay Mrs. Gardner $950, and interest, the balance to be applied to the payment of the judgment, and adjudging the costs against A. B. Gardner.

The court found the following facts:

1st. That on and prior to the 19th day of February, 1883, plaintiffs were husband and wife, and resided in Grayson county, Texas.

2d. That they had no land except that in controversy.

3d. That they purchased said land on the 19th day of February, 1883, with a view of making it their homestead.

4th. That at the time of the purchase it was leased for one year, and said plaintiffs could not then obtain possession of it.

5th. That they could not obtain possession of the lot until the 9th of May, 1883, when they moved into it and have ever since used it as a homestead.

6th. That Mrs. Gardner owned as her separate property $950 of the money used in purchasing the property in controversy.

7th. That Marx & Kempner recovered a judgment against A. B. Gardner in the county court of Galveston county on the 17th day of January, 1883, for $514.25 and $15 costs of suit.

8th. That an abstract of said judgment, authenticated as the law requires, was filed and recorded in the county clerk's office of Grayson county, as required by law, on the 19th day of March, 1883.

9th. That said Gardner declared to his wife the intention of making the lot in question their homestead at the time of the purchase, and it was agreed between them that they would move into it as soon as they could obtain possession.

10th. That said Gardner had not declared his intention to make said lot his homestead to any other person except his wife, nor had he taken any steps to occupy the same as a homestead prior to the 9th day of May, 1883.

11th. That the tenant occupying the said house attorned to said Gardner and paid him the rents from the date of the purchase.

12th. That Marx & Kempner had no notice that Gardner and wife intended to make said lot their homestead until they moved into it, on the 9th day of May, 1883.

13th. And as a conclusion of law that said lot was not the homestead of Gardner and wife until the 9th day of May, 1883.

*A. B. Persons* and *Cowles & Storey*, for appellants, that there was no lien, cited: Anderson *v.* McKay, 30 Tex., 187; Scott *v.* Dyer, 60

Tex., 137; Thompson on Homestead and Exemptions, secs. 247 to 252, inclusive; Neal v. Coe, 35 Iowa, 410; Monroe v. May, 9 Kan., 466, 475; Edwards v. Fry, 9 Kan., 417, 425; Brown v. Martin, 4 Bush, 47.

That the property was homestead, and exempt from sale, they cited: H. & G. N. R. R. Co. v. Winter, 44 Tex., 615; Moreland v. Barnhart, 44 Tex., 275; Cameron v. Fay, 55 Tex., 58; Schneider v. Bray, Tex. Law Rep., vol. 5, No. 3, p. 197; Anderson v. McKay, 30 Tex., 186; Scott v. Dyer, 60 Tex., 137; Thompson on Homestead and Exemptions, secs. 247–252; Neal v. Coe, 35 Ia., 407; Fogg v. Fogg, 40 N. H., 282; Monroe v. May, 9 Kan., 466, 475; Edwards v. Fry, 9 Kan., 417, 425.

*J. M. Standifer* and *Hare, Head & Hare*, for appellees, cited: Brooks v. Chatham, 57 Tex., 31; Swope v. Stantzenberger, 59 Tex., 387; Barnes v. White, 53 Tex., 631; Franklin v. Coffee, 18 Tex., 417.

WATTS, J. COM. APP.— With us an actual occupancy of the land is not, under all circumstances, an indispensable prerequisite in impressing upon it the homestead character.

But where there has been no previous occupation of the land as a homestead, then, to invest it with that quality, it has been held essential that there be an existing *bona fide* intention to dedicate the property as a homestead, and this intent must be accompanied with such acts of preparation and such prompt subsequent occupation as will amount to notice of the dedication, and thereby prevent this most valuable right from being converted into an instrument of fraud. Franklin v. Coffee, 18 Tex., 417; Barnes v. White, 53 Tex., 631; Brooks v. Chatham, 57 Tex., 33; Swope v. Stantzenberger, 59 Tex., 390.

In Brooks v. Chatham it is said: "There must be something more than mere intention; there must be some act done which will evince an intention to use it as a home."

To the same effect is the case of Fort v. Powell, 59 Tex., 321, where it is in effect held, that, to invest property with the homestead characteristics, the use and intention must concur.

However, the questions now under consideration arise upon a state of facts altogether different from those passed upon in the several cases cited.

Here the property was purchased for a homestead, and with the intention to occupy it as such, just as soon as possession could be had. And in fact as soon as the lease expired the parties promptly

took possession, and have since that time been occupying it as a homestead. At the time of the purchase by appellants, the property was then occupied under a lease which expired about three months afterwards. It was then improved property, and no additional improvements are shown to have been necessary to render it habitable. Appellants then had no other homestead and did not own any other land.

In Edwards v. Fry, 9 Kan., 425, it is in effect said, that the purchase and occupation of the homestead are not ordinarily contemporaneous acts. It usually requires some time for the vendor to move out and the purchaser to move in. And the law will not ordinarily wait until all this has been accomplished, before clothing the property with the homestead exemption. But where the purchase is made for the purpose of a home, with a view of an early occupancy, which follows within a reasonable time, this may secure the homestead as such from the time of the purchase. Occupation, however, is an essential element to secure this protection.

And in Neal v. Coe, 35 Ia., 407, it is said, " while the intention is not alone sufficient to impress the homestead character, yet it may be considered in connection with the circumstances. Some time usually intervenes after the purchase of property before it can be actually occupied, etc.

" Under such circumstances great inconvenience might arise if the homestead character was made to depend upon the actual personal presence of the members of the family."

It appears from the record that appellants purchased the property with the *bona fide* intention of occupying it as their homestead just as soon as they could get possession. They purchased the property for a homestead, and at the time owned no other land. The proceeds of their former homestead, which had been previously sold, was invested in this property.

It also sufficiently appears that the debt upon which the judgment in favor of Marx & Kempner was rendered against Gardner had been contracted before the purchase of the lot in controversy. Therefore this debt could not have been contracted upon the faith of the property; nor did Marx & Kempner advance any new consideration in the acquisition of the asserted lien.

As the appellants acted in the best of good faith in purchasing this improved property for a homestead, and upon the expiration of the lease took prompt possession and have ever since occupied it as such, under the facts and circumstances it must be considered that the occupancy followed the purchase in such reasonable time as

would invest the property with the homestead quality from the time of the purchase, as to those who have not been deceived to their injury, because the acts and declarations of appellants as to the dedication of the property as a homestead had not been more positive and notorious.

Our conclusion is that the judgment of the court below is erroneous; that it ought to be reversed and the supreme court here render such judgment as should have been rendered by the court below, viz.: That the injunction be perpetuated, and for costs against appellees.

REVERSED AND RENDERED.

[Opinion adopted April 29, 1885.]