PIERCE v. LANGSTON et al.   (No. 5738.)

(Court of Civil Appeals of Texas. Austin. Feb. 19, 1917. Dissenting Opinion Feb. 24, 1917.)

1. HOMESTEAD ⟨key⟩32—ACQUISITION AND ESTABLISHMENT.

Where land was purchased for the declared purpose and with the intention of husband and wife to occupy and use such property as a homestead, accompanied by improvements thereon and preparation to move upon and so occupy it, such property was not exempt from an attachment lien and sale thereunder as a homestead while the husband and wife were still occupying and using as a home an existing homestead, and the fact that the proposed homestead was occupied under a lease preventing them from taking immediate possession was immaterial.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 40–43.]

2. HOMESTEAD ⟨key⟩154—ABANDONMENT.

Abandonment of a homestead cannot be accomplished by mere intention, but only by removal and cessation of use of the existing homestead.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 307.]

3. HOMESTEAD ⟨key⟩81—LIABILITIES ENFORCEABLE AGAINST THE HOMESTEAD—VENDORS' LIENS.

Where property has been conveyed by deed subject to a vendor's lien, the purchaser has such title as will support the homestead right, and though the vendor's lien may be greater than the value of the property, and superior to the homestead right, the property does not lose its status as a homestead.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 114–118.]

Jenkins, J., dissenting.

Appeal from District Court, Coryell County; J. H. Arnold, Judge.

Action by J. L. Pierce against W. G. Langston and others, in which defendants filed a cross-complaint. From a judgment for plaintiff, but denying him a foreclosure of his attachment lien and the overruling of his motion for a new trial, he appeals. Reversed, with instructions.

McClellan & McClellan, of Gatesville, for appellant. R. F. Moore, of Gatesville, for appellees.

KEY, C. J. Appellees acquiesce in the correctness of appellant's statement of the nature and result of this suit, which is as follows:

"This suit was brought in the district court of Coryell county, by appellant, J. L. Pierce, as plaintiff, to recover of appellee W. G. Langston, as defendant, the amount due upon 94 certain promissory notes executed by said Langston to Pierce for $23.75 each and, to foreclose a vendor's lien securing same on 198 acres, more or less, of the Conrad Miglich, A. Wood, and Wm. Suggett surveys in Coryell county, Tex. Suit was filed December 23, 1915. It was alleged by plaintiff that the land above described was conveyed by plaintiff to defendant in consideration, among other things, of the execution of the notes above described, and in further consideration of the assumption and promise to pay by defendant of a certain note for $4,000, payable to J. D. Brown and of nine certain notes for $388 each, payable to A. P. Graves, and that the lien sought to be foreclosed was subject to a prior lien securing said Brown and Graves indebtedness.

"On the 27th day of December, 1915, plaintiff duly filed in this cause his affidavit and bond for attachment, wherein he complied in all respects with the law, and on the same date writ of attachment duly issued, directed to the sheriff or any constable of Comanche county, in obedience to which writ the sheriff of Comanche county did, on said 27th day of December, 1915, levy upon as the property of the defendant W. G. Langston a certain 126.5 acres of land out of the John Elliott survey in Comanche county, as fully and regularly appears from the return of said officer.

"On the 12th day of January, 1916, defendant W. G. Langston, joined voluntarily by his wife, the defendant T. E. Langston, answered, admitting the execution of the notes sued on, but charging in defense a fraudulent promise of plaintiff, J. L. Pierce, to protect them, de-

fendants against a foreclosure of the lien of the Graves notes aforesaid in the event defendants were unable to pay said notes at maturity, and by said answer asking judgment for rescission of the notes sued on herein, together with damages by way of cross-action on said alleged fraudulent promise.

"Answering to the writ of attachment, defendants specially pleaded that the land levied on thereunder was, prior to and at the time of the levy, the homestead of defendants, and exempt from attachment, urging in support of said plea that defendant W. G. Langston was the head of a family; that the land levied on was purchased with the intention of making same the future homestead of defendants; that defendants were improving said property and preparing to move upon same at the time of the levy; that said property was rented for the year 1915; and that the tenant, Mrs. Mattie Parsons, held such property for defendants as their homestead.

"Plaintiff, by general and special exceptions, challenged the sufficiency of the matters set up by said answer, and by supplemental petition specially pleaded in reply to the homestead plea of defendants that, at the time and prior to the time of the levy of the writ of attachment on defendants' land in Comanche county, defendants owned and were using and occupying as their homestead other land, to wit, 200 acres, more or less, of the Conrad Miglich, A. Wood, and Wm. Suggett surveys in Coryell county, fully described in plaintiff's original petition.

"On the 18th day of January, 1916, the case went to trial with a jury, and after hearing the evidence upon the various issues presented, the court instructed a verdict in favor of plaintiff for the amount of the principal, interest, and attorney's fees due on the notes sued on, together with a foreclosure of the vendor's lien on the premises described in plaintiff's petition subject to the Brown and Graves vendor's lien aforesaid, and also instructed a verdict for plaintiff on defendants' cross-action for damages, and judgment was entered accordingly. The issue of homestead as to the Comanche county land was submitted to the jury, and upon its verdict and the judgment of the court thereon, finding for defendants upon this issue and denying to plaintiff a foreclosure of his attachment lien on the Comanche county land, plaintiff prosecutes this appeal.

"Plaintiff's amended motion for a new trial was duly filed and presented, and on the 7th day of February, 1916, was by the court overruled, to which action plaintiff duly excepted and in open court gave notice at the time of appeal to the Court of Civil Appeals of the Third District, and thereafter, on the 26th day of February, 1916, perfected appeal by the filing of his appeal bond, and the case is now presented to this court for review.

"As an aid to the court, counsel for appellant would state that the several assignments presented herein are all controlled in large measure by the one question: 'Do the undisputed facts in this case establish that on the 27th day of December, 1915, the date of the levy of plaintiff's writ of attachment on the land of defendants in Comanche county, the defendants owned those certain other lands in Coryell county described in plaintiff's original petition which, by virtue of the nature of their use and occupancy, constituted the homestead of defendants? and, if so, whether, with a homestead thus actually dedicated and actually occupied as a home, the prior designation and improvement of the land in Comanche county levied on by the writ, accompanied with declaration of intention to make such latter place their homestead, and with acts of preparation to such end, was sufficient to establish such land as the homestead of defendants on said date and to divest their actual home of its homestead character in the face of the fact of occupancy and all other ac-

companying circumstances that go to make a homestead.' On the trial the following facts, bearing directly on the issue thus presented, were established, without controversy, to wit:

"Plaintiff's attachment was duly levied on the land of defendants in Comanche county on the 27th day of December, 1915, at 11 o'clock p. m. Defendants acquired the Coryell county land by deed of date January 14, 1915, and moved on said property on the 27th or 28th of said month. They moved on it with the bona fide intention of making same their home. It was their home. Defendants actually resided on said property with their family from the time they moved upon same until the 7th day of January of the next year; that is, January 7, 1916. Until said last-mentioned date, none of the household goods or anything connected with their home had been removed by defendants from their Coryell county property. At the date of the trial, defendants Mrs. T. E. Langston, nor any of the family, save W. G. Langston, had removed from the Coryell county property, but were then, as they had been continuously, residing upon same. Defendant W. G. Langston himself, at the date of the trial and during the trial, remained on the place. The property at the date of the trial was still owned by W. G. Langston. He had not deeded the property to any one, and there had been no sale of the property at all. Just an offer on his part to sell.

"Defendant W. G. Langston bought the Comanche county property about the 1st day of September, 1915, and moved on it the 9th day of January, 1916. He had left the Coryell county property on Friday, January 7th, and arrived on the Comanche county property Sunday, January 9th. Up to this time he had not moved and placed upon the Comanche county property any of his live stock or furniture. When he bought the property on the 1st day of September from Mr. Waldrop he designated the same as his homestead by recitation contained in the deed. Defendant W. G. Langston bought the land in Comanche county for a home and with the bona fide intention at the time of making it his future home. At the time he purchased the Comanche county farm, Mrs. Parsons was living on it, and had it rented for the year 1915. He improved the property prior to the filing of the suit by building a lot and six hog pens. Defendant Mrs. Langston, at the date of the trial, had never seen the Comanche county property, but says that it had been her intention and that of Mr. Langston all the time to move on it as their home in the future, and that Mr. Langston had put some improvements on the place and had held back enough money to build a house thereon suitable to live in. She had not moved because the trial was so near at hand, but had set a time to move before the trial, but the weather was too bad. She testified also that they had resided continuously on the Coryell county property from the date of the purchase until January 7th, and that she and the family remained on the property at the date of the trial, during all of which time the property was considered the home and residence of defendants, where they lived and had. all their equipment of a home.

"Mr. Langston authorized one W. A. McBeth to go to Mr. Graves and offer to deed the property back to him about a month or so before the trial, which Mr. McBeth testifies he did, but that Mr. Graves refused to accept a reconveyance. The defendant W. G. Langston in person offered to deed the property to J. D. Brown, and testified that since some time in July, 1915, when he realized he could not pay the indebtedness against same, he had abandoned the Coryell county property and not intended to live on it.

"In his motion for a new trial, appellant presented numerous assignments of error, assailing the action of the court on the indicated home-

stead issue. Four of these assignments are perpetuated in this brief, which are thought to be sufficient to submit the essential question involved. They relate respectively to the sufficiency of defendants' homestead plea, to the charge of the court, which submitted to the jury as a basis for judgment for defendants on the homestead issue the question of intention and preparation to occupy the land in controversy when it appeared that there was already an existing homestead, the refusal of a requested peremptory instruction for plaintiff on the homestead issue, and the sufficiency of the evidence to support the verdict and judgment as to such issue, and the assignments are presented in the order named."

### Opinion.

[1] The controlling question involved in this appeal may be stated as follows: When a homestead has been actually dedicated and is then being occupied and used as a home, is other property exempt from an attachment lien and sale thereunder, when the undisputed proof shows that such other property was purchased for the declared purpose and with the intention upon the part of the husband and wife to occupy and use such other property as a homestead, accompanied by improvements thereon and preparation to move upon and so occupy it, the proof showing that at the time the attachment was levied the husband and wife, together with their children, still occupied the former home, and did not move upon the other place until a short time after the attachment was levied?

The undisputed facts of this case bring it within the scope of the hypothetical question just stated, and if that question can properly be answered in the affirmative, the judgment in this case should be affirmed. On the contrary, if the law requires a negative answer to that question, the case should be reversed. That question has already been decided in appellant's favor by several decisions rendered by our Supreme Court. Archibald v. Jacobs, 69 Tex. 248, 6 S. W. 177; Johnston v. Martin, 81 Tex. 18, 16 S. W. 550; O'Brien v. Woeltz, 94 Tex. 148, 58 S. W. 943, 59 S. W. 535, 86 Am. St. Rep. 829. The first case cited is perhaps the leading case upon that subject, and we quote from it as follows:

"If everything the plaintiffs' evidence tended to prove be conceded, how stands the case? We have an insolvent debtor owning and actually using a residence and business house in no way connected with the property in controversy, but he had commenced to improve this property, and intended at some future time to use it as a residence and place of business. * * * There can be no doubt that the property on which they resided at the time of the assignment was made was * * * protected from forced sale, and they could not divest it of that character by an intention to abandon it at some future time, even though that intention was evidenced by the fact that they had commenced to improve the property in controversy with intent to use a part of it as a residence. * * * Abandonment of property actually homesteaded cannot be accomplished by mere intention; there must be a discontinuance of the use, coupled with an intention not to again use as a home to constitute abandonment, and without an abandon-

ment of an existing homestead no right can exist to fix that character to another property. * * * There could not be two places of residence for the family, separate and in no manner used together, and it must be held that the home in fact existing at the time the assignment was made was the only property which the appellees could claim as a residence homestead. Where no homestead dedicated by actual occupancy exists, effect must be given to ownership, intention, and preparation to use for a home, or otherwise one indebted might never be able to secure a home for a dependent family. This was recognized in Franklin v. Coffee, 18 Tex. 417 [70 Am. Dec. 292]; Barnes v. White, 53 Tex. 628; Swope v. Stantzenberger, 59 Tex. 390; Gardner v. Douglass, 64 Tex. 79. But no case was given to the extent of holding, when there was a home in fact, that this might be abandoned while actually used as the home of the family, and another homestead acquired by intention at some time in the future to use it as a home, accompanied with preparation to so improve it, as to make it suitable for such a use."

Counsel for appellees attempt to distinguish this from the line of cases cited upon two grounds, which are: (1) That the property levied upon, and which they intended to use as their homestead, was at that time under lease, and that they were not then entitled to possession; and (2) that as appellants' suit was based upon vendor's lien notes against the property then occupied by them as a home, and as the proof shows that the property was not worth as much as the lien amounted to, the general rule announced in Archibald v. Jacobs and the other cases to the same effect should not apply to this case.

[2] The answer to the first question is that appellees, having one homestead, could not acquire another until the existing homestead was abandoned, and such abandonment could only be accomplished by removal from and cessation of use of the existing homestead, and therefore their reason, or attempted excuse, for remaining in possession of the existing homestead becomes immaterial. It is the fact that they remained in possession of the existing home, and not their reason for so doing, that shows that they had not abandoned that homestead.

[3] The second contention is answered by the decision of the Galveston Court of Civil Appeals in Powers v. Palmer, 36 Tex. Civ. App. 212, 81 S. W. 818, in which the court said:

"The uncontradicted evidence shows that appellees had their home * * * in block 19. * * * This property had been purchased by them for a homestead and they had continuously occupied it as such. * * * The fact that it was not paid for in no way affected their homestead rights. * * * It is equally as well settled that, having title to said property sufficient to support a homestead right, and being in actual possession and occupancy of same, appellees would not lose their homestead right in the property by declaring their intention of abandoning it, or by acquiring other property with the intention of making it their homestead. * * * The agreement made by appellee * * * with the agent of the loan company that he would hold the property for said company did not divest appellees of their title to the property, and would not have prevented

them from asserting their homestead rights therein at any time. Nor do we think the fact that the indebtedness due upon the property largely exceeded its value can affect the question. This fact is but a circumstance going to show that appellees in good faith intended to abandon their homestead rights in the property, and, under the evidence, there can be no question that such was their intention. They failed, however, to divest themselves of either the title or possession of the property, and their mere intention to abandon it did not change its homestead character. If, at any time prior to the sale under the foreclosure judgment, the appellees had, from any cause, seen fit to change their intention of abandonment, it cannot be doubted that they could have asserted and enforced their homestead rights in the property. So long as their homestead rights in this property were protected and secured to them by the law, they could not acquire a homestead upon other property. Johnston v. Martin, 81 Tex. 18 [16 S. W. 550]; Archibald v. Jacobs, 69 Tex. 248 [6 S. W. 177]; Allen v. Whitaker, 27 S. W. 507; Sharp v. Johnston, 19 S. W. 259. Their title to this property was not divested out of them until the sale under the judgment foreclosing the vendor's lien. * * * We think it must be held * * * that appellees had no homestead right in the property, and * * * judgment [is] here rendered in favor of appellant."

In addition to what was said in that case, the writer deems it proper to express his individual opinion to this effect: When property has been conveyed by deed, the vendee has such title as will support the homestead right, and although the vendor may have a valid lien that can be enforced as against the homestead right, and although liens for taxes and certain other contract liens may be so enforced as against such right, the property does not lose its status as a homestead, although it is subject to forced sale to satisfy such liens. In other words, no person can have two homesteads at the same time, and if one already has an existing homestead, which is being used as such, that is the only property which the law will protect as a homestead, although the debt which the creditor is seeking to enforce against other property may be secured by a superior lien upon the homestead. To illustrate the point as to which place was appellees' homestead: Suppose the property upon which they resided had been worth twice as much as the vendor's lien notes, and appellant had sued upon an unsecured debt in addition to the vendor's lien notes, and had sought to subject that property to the payment of such unsecured debt by showing, as appellees have shown, that they had bought the property now in controversy for the purpose of making it their home, had put improvements upon it before execution to satisfy the judgment for the unsecured debt was levied upon the property they were living on, would the courts hold that such other property, and not the existing home, was the homestead of appellees at the time such levy was made upon it? That is only a different way of stating the question, which has already been decided in this state in appellant's favor. Hence we conclude that this appeal must be decided in favor of appellant.

Appellees' cross-action was decided against them by the trial court, and as they have assigned no error upon that branch of the case, and as the facts upon which the appeal is based are undisputed, it becomes our duty to reverse the case, with instructions.

Therefore the judgment of the trial court, refusing to foreclose appellant's lien upon the property in controversy, is reversed, and the case is remanded to that court, with instructions to render judgment for appellant foreclosing his attachment lien upon the property in controversy, and ordering the same sold to satisfy whatever amount of his judgment debt, if any, may remain unpaid after the sale of the other property upon which the judgment of the trial court foreclosed the vendor's lien.

Reversed, with instructions.

JENKINS, J. (dissenting). Being unable to agree with the majority opinion in this case, I here state my reasons for dissent.

The undisputed evidence herein shows that appellee Langston had purchased and resided upon with his family as his home a tract of land in Coryell county. As a consideration for the purchase of this land, he executed vendor's lien notes, and assumed the payment of other vendor's lien notes then outstanding against it. These notes in their aggregate exceeded the value of the land. They became due; he tried to get the time of their payment extended, but was unable to do so. He was unable to pay the indebtedness against the land. As early as July, 1915, he offered to deed the land to the holder of one of these notes, without other consideration than being relieved of the indebtedness against the same. This offer was refused. Both Langston and his wife then determined to abandon this land as soon as they could purchase another home. His only means to procure funds for such purchase was to sell his cows. This he did, and on September 1, 1915, purchased an improved tract of land in Comanche county with the bona fide intention, both of himself and wife, to move upon the same as soon as they could get possession of it. By reason of the fact that it was occupied by a tenant of their grantor under a rental contract, they could not get possession before January 1, 1916. Both Langston and his wife regarded the Comanche county land as their home from the date of its purchase, and intended to leave the Coryell county land and move onto the Comanche county land as soon as they could get possession. Before that time, to wit, on December 24, 1915, the appellant, who was the owner and holder of the vendor's lien notes executed by Langston for the Coryell county land, and who had brought suit on the same, caused a writ of attachment to be levied on the Comanche county land.

About the 1st of January, 1916, Langston occupied the Comanche land himself, with a portion of property. His wife did not accompany him, on account of inclement weather at that time, but for which she and her children would have moved upon the Comanche county land as soon as possession thereof could have been obtained. Prior to the levy of the writ of attachment Langston had made improvements on the Comanche county land sufficient to have dedicated the same as his homestead, if he did not at that time have another home.

It is well settled in this state, as well as in other states having homestead laws similar to ours, that actual occupancy is not necessary to impress the homestead character upon land, provided the acts of the party are sufficient to show his bona fide intention to occupy the land as a homestead, and a sufficient excuse is shown for his delay in doing so. Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832; Franklin v. Coffee, 18 Tex. 413, 70 Am. Dec. 292; Moreland v. Barnhart, 44 Tex. 280; Railway Co. v. Winter, 44 Tex. 611; Barnes v. White, 53 Tex. 631; Brooks v. Chatham, 57 Tex. 33; Swope v. Stantzenberger, 59 Tex. 390; Gardner v. Douglass, 64 Tex. 76; Dobkins v. Kuykendall, 81 Tex. 183, 16 S. W. 743; Wilkerson v. Jones, 40 S. W. 1047; Wolf v. Butler, 8 Tex. Civ. App. 468, 28 S. W. 51.

The case of Gardner v. Douglass, supra, is on all fours with the instant case, except in that case Gardner did not own any land other than that which was in controversy. It is upon this distinction, together with the fact that the Coryell county land had formerly been the homestead of Langston, and that he was till occupying the same, that the majority of this court base their decision. In the majority opinion it is said that where the homestead character has once been fixed upon land, it is not changed, so long as the owner continues to occupy the same as such. With this I agree, but I deny that Langston continued to occupy his former homestead as such. If so, it is because the law deduces such fact from the mere fact of occupancy, and against the undisputed testimony of the occupants that such was not the character of their occupancy, but that their present and fixed intention was to make the Comanche county land their home, and that they remained upon the Coryell county land for the sole reason that they were not, at that time, able to get possession of the Comanche county land.

Mere occupancy of land which one owns, unaccompanied with the intention of making it a dwelling place, does not constitute such land a homestead. For example: Suppose a farmer owns and resides upon a farm as his home. He moves to town for the purpose of educating his children, with the intention, when that object is accomplished, of moving back to his farm; but, instead of renting a residence in town, he buys one and occupies it with his family, renting his farm in the meantime. We apprehend that no one would contend that, under such circumstances the farm had ceased to be his homestead. Yet such would be the fact if his town residence had become his home, for one cannot have two homes at one and the same time. And if actual residence upon land which one owns of itself constitutes such land a homestead, the town residence would be the farmer's homestead.

Now, if it is the law—as it clearly is—that occupancy is not necessary to fix the homestead character upon land, and that actual residence upon land which one owns does not necessarily constitute it a homestead, what is it that gives the land its homestead character? My answer is, it is the intention, coupled with occupancy, or abandonment of occupancy, as a homestead, as the case may be, or evidenced by such acts as in law will be deemed equivalent to present occupancy or abandonment of occupancy for homestead purposes. Neither occupancy nor abandonment of occupancy alone is sufficient. It is the intention that governs.

In Cameron v. Gebhard, supra, Mr. Justice Brown, after citing numerous decisions to the effect that actual occupancy is not necessary to fix the homestead character upon land, says:

"From these decisions it is apparent that intention is almost the only thing that may not be dispensed with in some state of case; and it follows that this intention in good faith to occupy is the prime factor in securing the benefits of the exemption. Preparation—that is, such acts as manifest this intention—is but the corroborating witness to the declaration of intention, the safeguard against fraud, and an assurance of the bona fides of the declared intention of the party."

The law wisely requires such corroborating testimony for the prevention of fraud, but it is the fact established by such corroborating testimony that determines the homestead character. What fact? The present, fixed bona fide intention. The corroboration required by the law in this regard is analogous to that required to convict of perjury, or upon the testimony of an accomplice. It is not the corroborating testimony which constitutes the offense of the accused, but it is the commission of the illegal act which such corroboration establishes. And so it is not the acts of preparation to move upon land which constitutes such land the homestead, but it is the fact which such preparation evidences, viz.: the intention of the party.

And so, if the fact that a man actually occupies with his family land which he owns does not, if unaccompanied with the intention to permanently dwell thereon, make such land his homestead (as I have above illustrated in the case of the farmer who moves to town temporarily for the purpose of educating his children) then why should continued residence upon land which had formerly been one's homestead, unaccom-

panied with the intention to then occupy it as a homestead, continue such homestead character against the intention and desire of the occupant? I think that when the declared intention to abandon as a homestead land upon which one resides is accompanied with such corroborating circumstances as to satisfactorily establish the bona fides of such intention, such land then and there ceases to be the homestead of the party asserting such intention, though the actual possession of such land is not at that time abandoned.

Suppose in the instant case Langston had sold the Coryell county land with the intention to move upon the Comanche county land and occupy it as a home, and had evinced such intention by the acts shown in this case. Undoubtedly, under the finding of the jury herein, which was that the Comanche county land was his homestead, it would be our duty to affirm the judgment entered herein in accordance with such verdict. Why? Not because he had abandoned the possession of his former homestead in Coryell county, for in the supposed case he would not have done so, but because it had ceased to be his homestead, notwithstanding his continued occupancy of the same. Why did it cease to be his homestead? Because he had sold it? Not necessarily so; for one may have a homestead in a leasehold estate (Wheatley v. Griffin, 60 Tex. 209; Phillips v. Warner, 16 S. W. 423), but because the sale under such circumstances would have been conclusive proof that it had ceased to be his homestead, notwithstanding his continued occupancy. But I do not think that this is the only evidence by which such fact may be established. I think that the evidence of this case clearly established the fact that appellees had abandoned the Coryell county land as their homestead before the levy of the writ of attachment on the Comanche county land. It is said that appellees might have changed their intention to move off of the Coryell county land. And so, if they had moved off of it and onto the Comanche county land, they might have changed their mind and moved back onto the Coryell county land. But by so doing they would not have continued the Coryell county land as their homestead, but only have again established it as such; and, if in the meantime a creditor had secured an execution or attachment lien, their subsequently acquired homestead rights would not have defeated such lien.

It might be more difficult to prove that one had abandoned a former homestead for another before he had moved off one and onto the other, but the difficulty of proving a fact does not alter the value of such fact, when it is established in a manner sufficient to meet the demands of the law.

The majority opinion herein cites the case of Archibald v. Jacobs, 69 Tex. 251, 6 S. W. 177. That opinion, as stated by Judge Brown

in Cameron v. Gebhard, supra, sustains the proposition that actual residence is not, in all cases, necessary to a homestead right. In that case the evidence was not sufficient to prove that Jacobs had dedicated the lot in controversy as his homestead. The majority opinion also cites Powers v. Palmer, 36 Tex. Civ. App. 212, 81 S. W. 818, which is in point against the views herein expressed, but I do not think the decision, under the facts of that case, is sound.

I think that under the undisputed facts of this case, the judgment of the trial court should be affirmed.