## DOROUGH v. PANSE et al. (No. 3778.)

Court of Civil Appeals of Texas. Texarkana. Jan. 9, 1930.

S. I. Robison and Elmer Lincoln, both of Texarkana, for appellant.

R. H. Harvey and C. R. Newland, both of Linden, for appellees.

HODGES, J. Mrs. Mary Panse, the appellee in this suit, was formerly Mrs. Mary Hicks, wife of A. L. Hicks. In November, 1927, Mrs. Panse, then Mrs. Hicks, was granted a divorce from A. L. Hicks upon grounds not necessary to mention. Prior to the divorce decree they owned some community property, consisting partly of land. In the adjustment of their community rights, it was provided in the judgment granting the divorce that Hicks should pay his former wife the sum of $1,500 as compensation for her interest in the community property awarded to him. At that time they owned in common 215 acres of land situated in Cass county, which was incumbered with a lien of $225. Not being able to pay the $1,500 in cash, Hicks, a few days after the divorce was granted, executed a note for $1,725, payable to his former wife, and secured the note by giving a mortgage on the 215-acre tract of land above mentioned, the wife having agreed to assume the debt of $225. In a little more than three months after that transaction, Hicks filed a petition in bankruptcy, and was later adjudged a bankrupt. After the divorce, Mrs. Hicks married her present husband, ——— Panse. In March, 1929, this suit was filed by Mrs. Panse and her husband against Hicks to establish her debt and to foreclose the mortgage on the land. Hicks pleaded his discharge in bankruptcy, but made no other defense. Some time later, R. P. Dorough, as trustee of the bankrupt estate of A. L. Hicks, filed a petition of intervention seeking to recover the land in controversy as a part of the estate of Hicks and subject it to his debts. The intervener alleged that the mortgage was void under the bankrupt law because it was executed less than four months before the petition in bankruptcy was filed and at a time when Hicks was insolvent. Mrs. Panse, the plaintiff, had anticipated that defense, and alleged in her original petition that the property covered by the mortgage was a homestead at the time the mortgage was executed.

The case was submitted to the court without a jury, and a judgment was rendered in favor of the appellees establishing the debt and foreclosing the mortgage. The court filed the following findings of fact and conclusions of law:

"Findings of Fact.

"Mrs. Mary Panse formerly the wife of the defendant, A. L. Hicks, which relation existed until the 12th day of November, 1927, when the said Mrs. Mary Panse, at that time Hicks, obtained a decree of divorce from her husband, A. L. Hicks, in the District Court of Morris County, Texas; that at the time judgment was entered by said court in favor of Mrs. Mary Hicks (Panse) against A. L. Hicks for the sum of $1,500.00 which was her one-half interest in the homestead of herself and husband at the time of said decree of divorce.

"That, at the time of the rendering of said decree of divorce, Mrs. Mary Hicks (Panse) and husband, A. L. Hicks, owned a homestead which was the 215 acres of land upon which a lien is asserted in this suit; that this land was being used and occupied by A. L. Hicks at that time as a homestead. That to secure the payment of her one-half interest in said homestead, represented by the sum of $1,500.-00 taken in lieu of land, the said A. L. Hicks executed his note with a deed of trust on said 215 acres of land in favor of the said Mrs. Mary Hicks (Panse), and included in the face of the note the sum of $225.00 which was a lien against said land and which amount was later paid off by Mrs. Mary Hicks (Panse). That within three months after the execution and delivery of said note and deed of trust the said A. L. Hicks filed his petition in bankruptcy. The debts listed were community debts, part of them having been incurred in cotton speculation after he and his wife had separated but prior to the rendition of the decree of divorce. The said A. L. Hicks was not insolvent at the time of the said decree of divorce on the 12th day of November, 1927, nor at the time of the execution and delivery of said note and deed of trust, nor was he rendered insolvent thereby, it having been shown that he suffered losses in cotton speculation prior to the decree of divorce and after execution of said note and deed of trust and before the filing of his petition in bankruptcy.

"Conclusions of Law.

"The note and deed of trust executed in favor of Mrs. Mary Hicks (Panse) by A. L. Hicks, on the 12th day of November, 1927, at the time of the decree of divorce between them and the adjustment of the property equities existing between them was valid and enforceable, and not a fraud on the rights

of any creditors A. L. Hicks might have had at that time. It not being shown that A. L. Hicks was insolvent at the time of the execution of the note and deed of trust, there was no preference as among creditors. Also there was a consideration for the execution of said note and deed of trust, since it was for the wife's one-half interest in the community homestead. The creditors had no right as against the 215 acres of land, regardless of the question of insolvency of A. L. Hicks, and the District Court of Morris County, in partitioning said homestead, had a right to decree that a sum in cash be paid Mrs. Mary Hicks (Panse) in lieu of her interest in the land, which was exempt from execution."

The trustee alone has appealed, and challenges the sufficiency of the evidence to support the findings of the court upon either of the two controlling issues.

■ The evidence shows that Hicks and the appellee Mrs. Panse were married in 1919, and shortly thereafter resided upon another tract of land which was owned by Hicks before the marriage. In 1925 they purchased a house and lot in Naples, where they resided until the latter part of 1926. Mrs. Panse testified as follows:

"I married Mr. Hicks on May 4th, 1919. We lived where he was living when his first wife died—on some of his land in Cass County. After that he bought a lot in town and built a house on it; we lived there one year. That was in Naples. That was in 1925. We stayed there one year, I think. That house was sold. Mr. Hicks and I sold it. * * * He explained to me the purpose of selling the place. It was the summer of 1926 that we sold it. I don't remember the month; I think it was about the middle of the summer. He had been buying property all of the time, we had tried to keep the Collins place (the land in controversy) clear. We thought maybe we would move back down there. The closer the time came and at the end of 1926 I still thought that we would move back down there. When we sold the house and lot in Naples I thought we were going to move back down to the Collins place. I thought that was where I would live next year, and I guess as long as I lived. He (meaning Mr. Hicks) went down there and made a crop—or started to make one. He said when the crop was finished we would move down there. He moved some of the furniture down there; left just enough to get by on the rest of the year. The reason I didn't go down there with him then was because I did not want to live in the house with somebody else. They were renters; they had possession of the house for 1926. I intended to move down there just as soon as the house was vacant. The tenants would leave the place when the crop was finished and gathered; they had possession of the place for that crop year. Mr. Hicks went down there that year and

worked. He cultivated it and farmed it. He stayed at the renter's house. He made a little crop there in 1925, and a good crop in 1926. I stayed in Naples in order to be there when the tenants vacated the house. I just stayed on up there. We rented our house for two months after it was sold."

She further testified that on account of sickness, and for the purpose of being treated, she went to Dallas in October and stayed there until about Christmas. After leaving Dallas, she went to her mother's and lived. It appears from her testimony that she and Hicks did not actually live together at any time after her return from Dallas. It was due, according to her testimony, to his refusal to live with her. She further stated:

"When I was in Dallas Mr. Hicks stayed all of the time at the rented room on the farm. The other things were stored. He had a bed, a rug and some chairs out at the farm. I expected to go to the farm when I got out of the hospital."

On cross-examination, she testified:

"We bought the Collins tract (the 215 acres) before we moved to Naples. Mr. Hicks told me before I went to Dallas that we would go down there and live. That is what I wanted to do. The reason I did not go down there before was because there was no place for me to live down there. As soon as Mr. Hicks told me that we could not live together I brought suit for a divorce. If he had not told me that I would have gone on and lived with him."

She further stated:

"At the time we sold the place we did not have any other place that we could go except the 215 acres, unless we rented. We sold our place somewhere in 1926. It was cheaper to live down there on the farm than to rent in town."

"You did not have any other place to live on in Cass County?

"I don't know. He told me that was where we were going to live. We did not have any other land to live on. That's all that we had."

There was some testimony tending to corroborate the statements of Mrs. Panse, and some tending to impeach them. It thus appeared from testimony which the court had a right to accept as true that, after the sale of the Naples property, this was the only land owned by Hicks and his wife, and that they had a bona fide intention to use and occupy it as a homestead. The proof showed that such intention was partly executed; that Hicks had moved a part of the household goods to the place; that he occupied a room there and grew a crop on the premises during the year 1926. His wife gives as a reason for not going with him that she did not wish to live in the house with the tenants. There is no evidence of an abandonment of

the homestead by Hicks, after he declined to longer live with his wife.

Those facts are,.we think, sufficient to constitute a dedication of the land as the family homestead. Clements v. Lacy, 51 Tex. 150; Gardner v. Douglass, 64 Tex. 76; Hardin v. Neal, 32 Tex. Civ. App. 335, 74 S. W. 334; Davidson v. Jefferson (Tex. Civ. App.) 68 S. W. 822; Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832. It was not essential that the wife should join the husband in the occupancy of the land in order to complete the dedication to. homestead uses. That may be done by the husband alone, where actual occupancy is necessary.

If the land became a homestead during the existence of the marital relations between Hicks and the appellee, it was exempt as such at the time the divorce was granted, and could not be subjected to the payment of community debts. The question then is, Did it lose that exempt character by the granting of the divorce? It is contended that the right of a husband to claim the homestead exemption is lost when he is divorced from his wife, leaving no other constituent of the family. In the case of Woods et al. v. Alvarado State Bank, 19 S.W.(2d) 35, our Supreme Court has, we think, decided that question to the contrary. While a divorced husband with no family cannot acquire a homestead exemption, he may continue to claim one ' which had been previously ac¬ quired while he was the head of a family. Woods et al. v. Alvarado State Bank, supra.

The proof showed that at the time the divorce was granted Hicks owed something in excess of $13,000. It was agreed by counsel that, at the time he was adjudicated a bankrupt, he owed $13,880.66 of secured debts and $385 of unsecured debts; that, after the adjudication in bankruptcy, the property securing the claims had been sold, and after the application of the proceeds there remained a balance of $5,000 unpaid. It was further agreed that there was no property in the hands of the receiver of the bankrupt estate with which to pay those claims or any part thereof, and that the District Court of the Eastern District of Texas, in which the bankruptcy proceedings were pending, had authorized the trustee to intervene in this suit in behalf of the bankrupt estate.

The evidence does not make it clear how much property Hicks owned at the time the divorce decree was granted. There was some testimony as to what Hicks said he owed and owned. The record also indicates that Hicks had conveyed some of his land prior to filing the petition in bankruptcy, and an intimation that these conveyances were made for the purpose of defeating the claim of his creditors. The burden of proving that the bankrupt was insolvent at the time the con-

veyance was made, if made within four months of filing the petition in bankruptcy, devolves upon the trustee in a suit of this character. Tumlin v. T. J. Bryan, Trustee (C. C. A.) 165 F. 166, 21 L. R. A. (N. S.) 960, and cases there referred to.

We are of the opinion that under the evidence in this case the court had a right to conclude that proof of insolvency had not been made, and therefore was justified in finding that Hicks was not insolvent when he executed the mortgage to his former wife.

The judgment will therefore be affirmed.