**Ella SIMANK et al., Appellants,**

v.

**Lee Hurst ALFORD et al., Appellees.**

No. 11670.

Court of Civil Appeals of Texas.

Austin.

May 7, 1969.

Rehearing Denied May 28, 1969.

R. B. Thrasher, Max P. Flusche, Jr., Austin, for appellants.

Barkley, Cutcher & Alderson, James L. Cutcher, Taylor, for appellees.

O'QUINN, Justice.

When Elmo R. J. Simank died intestate in 1963 he owned 67.9 acres of farm land in Williamson County which is the subject of this lawsuit.

The sole question is whether the undivided one-half interest in the land awarded to Simank's mother, brother, and sister by the trial court is subject to the homestead interest of Simank's widow.

Simank's mother and his brother and sister brought this lawsuit in trespass to try title against the widow as administratrix of Simank's estate and against Lee Hurst Alford as her lessee.

The cause was tried before the court in March, 1968, resulting in a judgment entered October 31, 1968, awarding an undivided one-half interest in the land to plaintiffs and an undivided one-half to the widow, with the further provision that the interest of plaintiffs be "* * * subject to homestead interest of Mildred Simank [the widow] in and to said property * * and that the said Mildred Simank * * * have and recover a homestead interest in

and to the one-half undivided interest of said property owned by * * *" plaintiffs.

From this judgment plaintiffs have appealed and contend that the evidence does not support the establishment of a homestead by Simank and his wife during his lifetime. Appellants state, "The plea of not guilty filed by way of answer by * * Mildred Simank * * * placed the burden of proving a homestead interest in her favor * * * and whether or not that burden of proof was met * * * and discharged by her, is the only issue to be decided * * *" in this appeal.

■ No findings of fact or conclusions of law were made by the trial court and none was requested. We hold that the evidence sufficiently supports the trial court's finding implied in the judgment that Mildred Simank had a homestead interest in the land. We affirm judgment of the trial court.

Elmo Simank bought the 67.9 acres of land in 1954, prior to his marriage in December, 1959, to Mildred Simank, appellee. After their marriage, Simank and his wife lived in a house owned by his wife in Austin until January, 1961.

Mildred Simank testified that she and her husband moved to the 67.9-acre farm where they lived "for a little while" before moving about 200 yards to the recently remodeled home of Ella Simank, mother of Elmo Simank, whose farm adjoined the 67.9-acre tract. Ella Simank testified that her son, Elmo, and his wife, Mildred, never did live in the house on Elmo's farm, but that they started living with her early in 1961 and stayed there until his death June 4, 1963.

Mildred Simank testified without contradiction that she and Elmo Simank moved from her house in Austin in January, 1961, intending "never to live there again" and that their intentions when moving were that, "We were going to live on his land." The record also shows that

Simank and his wife never returned to the Austin house, that Mildred Simank did not return to it after her husband's death, and that in 1966 the place was sold.

Mildred Simank testified that she and her husband in 1960 looked into the cost of building a home on the 67.9 acres, but instead worked over the house already on the land by repairing the porch, painting, and putting a roof on the residence.

The record does not disclose when these repairs were made but the testimony regarding the repairs was given by Mildred Simank when questioned about the plans in 1960 to build a new home. This testimony is quoted:

"Q All right. Now, as far as that house in Austin is concerned, just tell us in your own words, without me asking you, when you moved from that house to Simank land or wherever you moved, when you and Elmo moved out of it, what were your intentions at that time regarding that house?

A Never to live there again.

Q What were your intentions as far as where you were going to live?

A We were going to live on his land.

Q Did you ever investigate the cost or did you ever look into plans, and so forth, to build a home on that land?

A Yes, we did.

Q Can you tell me approximately when that was?

A In the year of 1960.

Q All right. Did you ever do any work on the house that was on the land at the time that it was there, the house that's there? Did you ever do any work on that house?

A Yes, I did.

Q What?

A Repaired the porch and painting, and we put a roof on it."

The trial court apparently believed that the repairs were made in anticipation of later occupancy of the house by Simank and his wife and not for any purpose inconsistent with the place being used as a homestead.

Mildred Simank testified that as soon as the remodeling was finished in 1961 on Ella Simank's house, she and her husband moved out of their house and over to Ella Simank's house, where they remained until his death following an accident in 1963. Adella Mueller, Elmo Simank's sister, testified that Simank and his wife never lived on their farm, but moved from the Austin house to Ella Simank's home in the "latter part of '61 * * * when mother had the home remodeled so they could move in."

It is undisputed that Elmo Simank owned no land other than the 67.9 acres. In addition to improvements on the house, which Mildred Simank said they lived in "for a little while," the farm was cultivated by Elmo Simank during his life, and his mother "had a chicken farm there for a while" before she "moved back in the old homeplace." At the time of Elmo Simank's death, in 1963, the land was "in the Soil Bank" and "only the 2-acre lot allotted for corn" was being cultivated.

After Elmo Simank's death his widow moved back to Austin, where she was employed, and rented the farm to Gene Devine and later to Lee Hurst Alford, who raised crops on the land. Mildred Simank testified that she and her husband "claimed this 67.9-acre tract as a home" and that she believed it was in the years 1961 and 1962 that her husband claimed the tract "as a homestead." This testimony was given during inquiry under cross-examination regarding claim of a "home for tax purposes" on the Austin property by Mildred Simank prior to and during occupancy of the Austin place by her and her husband before moving to the farm. Mildred Simank testified that after her husband's death she left to her attorney matters pertaining to renting the land and all matters pertaining to the estate. She stated that she did not know whether the land had been claimed as her home "since Elmo's death."

Mildred Simank testified that she claimed the Austin house as a homestead prior to her marriage and during the year or more she and her husband occupied it prior to moving to his farm in January, 1961. She did not change this designation with the tax collector until a year before she sold the place. After she and her husband moved from the Austin house to the farm, Mildred Simank never lived in the Austin residence. After her husband's death, when she returned to Austin, Mrs. Simank lived with a friend on Enfield Road before moving to an apartment house where she resided at the time of trial.

Although appellants do not claim under assignment of error that the homestead, if created, was abandoned by Mildred Simank, appellants raise the question of abandonment by this statement in their brief:

"It appears under the facts and the law set forth in * * * [Shelton v. Providence Washington Ins. Co., 131 S.W.2d 330, Tex.Civ.App., El Paso, 1939, no writ] that * * * Mildred Simank * * * might have a homestead interest in the undivided one-half interest in and to such lands passing to the * * * Appellants herein, except for the fact that such homestead rights of the said Mildred Simank in and to said land had been abandoned by her."

There is not sufficient evidence to show abandonment of the homestead by Mildred Simank after her husband's death, and this contention is not sustained. Jolesch and Chaska Co. v. Hampton, 297 S.W. 271 (Tex.Civ.App., Waco, 1927, writ ref.) and cases there cited.

We are required to examine the evidence in the light most favorable to the judgment. We must affirm the judgment if it can be upheld under any theory supported by the pleadings and evidence. It was the province of the trial court to pass on the credi-

bility of the witnesses. Pasha v. Schell, 229 S.W.2d 818 (Tex.Civ.App., Fort Worth, 1950, writ ref.).

■ It is settled that a rural homestead may be claimed even before a dwelling is actually constructed on the land. Bartels v. Huff, 67 S.W.2d 411 (Tex.Civ. App., San Antonio, 1933, writ ref.). The exemption arises if the owner intends to improve and occupy the premises as a homestead and if preparations for that purpose are of that character and have proceeded to such extent as to manifest beyond doubt the intention to complete the improvements and reside upon the land as a home. Lilly v. Lewis, 249 S.W. 1095 (Tex.Civ.App., San Antonio, 1923, writ dismd.); Franklin v. Coffee, 18 Tex. 413 (1857).

■ Where there has been no previous occupation of the land as a homestead, it is essential that there be an existing bona fide intention to dedicate the property as a homestead, and the intent must be accompanied by such acts of preparation and such prompt subsequent occupation as will amount to notice of the dedication. Gardner v. Douglass, 64 Tex. 76 (1885). Mildred Simank testified that in 1960, the year following her marriage to Elmo Simank, they considered plans to build a home on his land. Improvements were made, including a roof, on the old house already on the land, apparently in that same year, for in January, 1961, they left Austin, where they had lived since marrying, and lived for a while in their house on his land. However brief this occupancy may have been, there was occupancy, followed by moving across the property line into his mother's home with her. They continued to cultivate the 67.9 acres, and Elmo made a claim of homestead, beginning with the year they moved into their house, until the year he was fatally injured in an accident.

The evidence, when given interpretation favorable to appellees, as required by law, is sufficient to show establishment of a homestead by Simank and his wife on the 67.9 acres in Williamson County. Elmo and Mildred Simank left the home in Austin with intention never to return to it. Neither of them ever returned. They left Austin because they "were going to live on his land." Their intent to leave one home and establish another was accompanied by overt acts carrying out their intentions. They did live on his land, in a house they repaired, painted, and re-roofed in lieu of building a new residence. They lived there "for a little while," after which they moved about 200 yards to the remodeled home of Simank's mother. They continued to use and cultivate the 67.9 acres. They claimed the "tract as a home." For at least two years, in 1961 and 1962, Elmo Simank claimed this land "as a homestead." After Simank's death in June, 1963, Mildred Simank handled the property through her attorney for renting and estate management, and she did not know whether "since Elmo's death" the land was claimed as her home.

■ Although the courts of Texas have sought to "prevent this most valuable right from being converted into an instrument of fraud" with respect to the claims of creditors (see Gardner v. Douglass, supra), the Supreme Court has followed the generally accepted rule that homestead laws are to be liberally construed to effectuate their beneficent purpose. Woods v. Alvarado State Bank, 118 Tex. 586, 19 S.W.2d 35 (1919); Cocke v. Conquest, 120 Tex. 43, 35 S.W.2d 673 (1931); Trawick v. Harris, 8 Tex. 312 (1852); Schneider v. Bray, 59 Tex. 668 (1883). Application of the rule in this case does no violence to the claim of a creditor, since none is involved, but only extends to the widow enjoyment of a homestead right in the land until such time as that right may expire.

As was said in Foley v. Holtkamp, 28 Tex.Civ.App. 123, 66 S.W. 891 (Galveston, 1902, writ ref.), "We do not mean to say the case is a strong one, or that, if primarily presented to us, we would have reached the same conclusion," but under the testimony we are unable to say that the im-

plied findings of the trial court "are so against the weight of the evidence as to require our interference."

The judgment of the trial court is in all things affirmed.

Affirmed.

HUGHES, Justice (dissenting).

There are two questions in this case. One, whether the property in suit was ever the homestead of Mildred Simank and her husband, Elmo Simank, and, two, if so, had it been abandoned by Mildred Simank after the death of her husband. I do not reach the latter question.

The subject property was the separate property of Elmo Simank who married Mildred Hicks on December 24, 1959. Elmo Simank died intestate June 4, 1963.

When Elmo Simank married he was living with his sister, Mrs. Adella Mueller in Manor, Travis County.

All of the testimony offered to show that this property was the homestead of Mr. and Mrs. Elmo Simank is the following:

There was a habitable house on the farm, also a hen house and barn.

Mrs. Mueller testified that Elmo was in possession of the land at his death, and he had planted some crops on it.

The evidence is undisputed that Mr. and Mrs. Elmo Simank lived in Austin from the time of their marriage until 1961 when they moved, and I quote her testimony:

"Q  All right. In January of '61, where did you move?

A  I moved to one and a fourth miles northwest of Thorndale.

Q  On what place?

A  On a farm.

Q  On this 67.9 acres?

A  For a little while..

Q  Where did you live there, at that time?

A  Beg your pardon?

Q  Did you live on the farm at that time?

A  Yes.

Q  How long did you live there?

A  Where?

Q  On the farm.

A  As soon as, we moved to the other house as soon as we could—

Q  You lived at the house of your mother-in-law, Mrs. Ella Simank?

A  No. We did not live with her.

Q  You did not live with her? Did you ever live there?

A  On which farm?

Q  On Mrs. Ella Simank's farm, her home.

A  Yes. We lived there from January of '61 until June of '63.

Q  January of '61 until June of '63 you lived in the home of Mrs. Ella Simank?

A  Yes.

Q  On a farm in Williamson County?

A  Yes."

(Reference is here made to the testimony of Mrs. Simank quoted in the majority opinion)

"Q  Have you ever claimed this 67.9-acre tract as a home?

A  Yes, we did.

Q  Have you claimed it as your home since Elmo's death.

A  Not that I know of.

Q  Not that you know of.

A  I don't know.

Q You don't know whether you have claimed it as a home or not?

A No.

Q And what years did you claim it as a homestead, then, before his death?

A I think he claimed it in 1961 and 1962."

Art. 16, Sec. 51 of the Texas Constitution, Vernon's Ann.St., provides, in part, that the property claimed as a homestead "shall be used for the purposes of a home." In speaking of this provision the Court in Cocke v. Conquest, 120 Tex. 43, 35 S.W.2d 673, Tex.Comm. of App. (1931) said:

"The framers of our organic law had no thought of exempting 200 acres of land in the country as a home for each family, upon which its members might reside, when they thought proper, but this exemption is only in the event such lands are used for the purpose of a home. The exemption is not of any definite number of acres, but of the home, and the number of acres is a limitation placed upon that home."

In Ratliff v. Smith, 178 S.W.2d 138, Tex. Civ.App. El. Paso, writ ref. (1943) the Court stated:

"The homestead of the family is initiated by the dedication thereof by the head of the family. Dedication of a rural homestead is accomplished by occupancy thereof by the head of the family as a place of residence and the use thereof for the support of the family."

The occupancy of the farm testified to by Mrs. Mildred Simank was, by her own admission transitory and only until she and her husband could move into his mother's house. At most, this occupancy could only have been for a few days. This, in my judgment, was not occupancy as a place of residence, a residence being defined as an "Act or fact of abiding or dwelling in a place for some time; act of making one's home in a place." Webster's Int. Dict. Second Ed., unabridged.

Just when the Simanks did the repairing on the farm house is not shown. While the law is that homestead rights may be acquired prior to occupancy, such rights must be based on an intention to occupy evinced by overt acts indicating such intention followed by actual occupancy within a reasonable time. Gardner v. Douglass, 64 Tex. 76 (1885); Parsons v. McKinney, 63 Tex.Civ.App. 617, 133 S.W. 1084 (Texarkana, writ ref. 1911); Gillette v. Davis, 296 S.W. 658, Tex.Civ.App. Eastland, no writ (1927).

The majority implies that the repairs to the house on the farm were made in 1960. If this assumption be accepted then these acts may have been sufficient to show an intent to occupy the house as a home. The fact is, however, that it was never so occupied and the record contains no evidence that any acts were performed by the Simanks during the approximate three years they lived with Mrs. Ella Simank indicative of an intention to so occupy it. This three year wait is, in my opinion, an unreasonable period within which to occupy the farm as a home following the 1960 repairs.

The majority quotes from appellants' brief to the effect that appellee might have a homestead interest in their one-half interest in the lands except that she had abandoned it. This statement is inexplicable because the tenor of their brief is to the contrary and the case cited by them does not involve the issue of whether certain property was occupied as a homestead. I do not believe appellants intended to brief themselves out of this case or that their brief should be so construed.

The burden was on Mrs. Mildred Simank to establish her homestead rights in this farm. I believe that she failed to discharge this burden and that this cause should be reversed and remanded since it is obvious that it has not been fully developed. I respectfully dissent.