### T. W. MORRIS v. L. N. HALBERT.

1. Under the laws of this State, heirs may take the property of their deceased ancestor, and pay his debts, without bringing the estate within the jurisdiction of the probate court ; and if, in pursuing this course, they sell portions of the property and make proper application of the proceeds to the payment of the debts, their acts are entitled to full faith and credit, as though they acted in the capacity of administrators or executors.

2. Note the opinion in this case as to the conditions which must concur, to enable an administrator to obtain an order to sell, as assets, real estate which had been sold by the heirs previous to the grant of the administration.

3. The doctrine that judgments cannot be collaterally impeached in other actions is not applicable to void judgments. They can always be impeached.

APPEAL from Washington. Tried below before the Hon. I. B. McFarland.

The opinion of the court is referred to for a statement of the case.

*J. D. & D. C. Giddings*, for the appellant.

*Sayles & Bassetts*, for the appellee.

WALKER J. This is an action of trespass to try title ; the title to the land comes through R. T. Matson, deceased. The plaintiff ·claims under an administrator's deed. The defendant claims under a deed from the heirs of Matson. Matson died in the year 1864, leaving an estate, mostly in land, appraised at seventeen thousand dollars. His debts amounted to about six or

seven thousand dollars. No administration was granted until August, 1868.

In the meantime the heirs had agreed to pay off the debts of the estate, and divide the property. Some of the debts were paid, and Halbert, being a creditor of the estate to the amount of two hundred dollars, purchased of the heirs the small tract of land in controversy for the sum of two hundred and fifty dollars, surrendering his claim against the estate, and paying the fifty dollars balance in money. The land in controversy is a part of what is known as the Gordon tract, which was set apart to the widow of R. T. Matson as a homestead. The widow, dying, left Mrs. McNelly, the wife of L. H. McNelly, her sole heir. McNelly and wife, in the month of January, 1868, sold and deeded the land to Halbert, as before stated.

In the month of August subsequent, Morris, the brother of the appellant, took out letters of administration upon the estate of R. T. Matson. At the time the McNellys deeded the land to Halbert, it will be seen, there had been no administration; the deed is not impeached for fraud, nor is it claimed that the estate did not receive the full benefit of the sale.

The estate is solvent, being worth sufficient to pay all the debts, and leave a balance of more than ten thousand dollars to the heirs. There is evidence to show that the plaintiff, acting as the attorney of his brother, the administrator, had full knowledge of the previous sale to Halbert, at the time he purchased the land, and that his brother and he both assured the defendant that it was not their purpose to sell the land, which had been sold to him by the heirs. The administrator did not obtain his order to sell until 1869.

The instruction of the court to the jury laid down the rule of law correctly. Indeed, we think it might have been with propriety more strongly stated against the appellant than it was.

Upon the death of the ancestor, the legal title descends to the heir, subject to the expenses of administration and the payment of debts. Under our laws the heirs may take the

property and pay the debts, without bringing it within the jurisdiction of the probate court. And if they proceed to do this, and, acting in good faith and publicly, they dispose of portions of the property, making the proper application of the proceeds of sales to the payment of debts, their acts are entitled to full faith and credit, just the same as if they acted as administrators or executors.

They can be required to give bond, if the creditors deem it necessary; and, if a bond was not required in this case, it does not appear that any one has been injured thereby; there is yet an abundance of property to pay all the debts, leaving a large surplus. And if the property sold by the heirs did not bring its full value, and the proceeds had not been properly applied to the payment of debts, they are the only persons who can possibly be made the sufferers thereby. The order of the probate court was improperly granted, if it were intended thereby to sell the six acres previously sold to Halbert. But this was a part of the Gordon tract, which had been set apart as a homestead to the widow, Mrs. S. V. Matson; and it appears to us much more than probable, that the court was not made aware that any part of the lands described in the petition had ever been sold by the McNellys to Halbert, or certainly the order would never have been issued.

The law required a much stronger showing than was made to the probate court, before such an order could have been legally issued; and the only grounds on which it could have issued, to sell the property here in controversy, must have been :—

*First*. That the property belonged to the estate of R. T. Matson, deceased,—which it did not, at the time the order was applied for.

*Second*. That there existed a necessity to sell the title of the heirs to pay the debts of the ancestor; and that there were not other sufficient assets, in the hands of the administrator, to pay off and discharge the remaining unpaid debts against the estate.

These three conditions concurring, the administrator might

have obtained an order to sell the land, and could have made a good title. His order was void; his sale was illegal; and no title ever passed to the appellant, nor could he have derived any title in this case without suffering that which looks very much like a fraud, to ride down and triumph over the strongest equities.

It is useless to talk about not impeaching the judgments of a court collaterally. This doctrine applies to judgments which are voidable only; but judgments which are void can always be impeached, and it matters not that these proceedings are here called in question in another action. They can have no force or efficacy in any court. This principle was decided in the case of Harris v. Graves, 26 Texas, 577, and reaffirmed by this court at the present term.

In that case Rutledge, the administrator, not being the heir or next to kin, was appointed the administrator of the estate of Jesse Harris, Jr., in 1837. Young Harris was killed at Goliad under Fannin, and was a soldier of the Republic, so styled by the court. The probate court granted Rutledge an order to sell the land, out of which litigation sprang, which has never been brought to a final determination until this day. But the court has twice declared the proceedings of the administrator, under the orders of the probate judge, absolutely void. The case of Mitchell v. De Witt, 20 Texas, 294, fully sustains the doctrine we have herein laid down. Justice Wheeler says in his opinion, " upon the death of Castleman, his wife's interest in the com- " munity became liable to her disposition, but subject to the " community debts, and the charges of administration. By sale " of her community interest, she could not deprive the probate " court of its power to order administration of the estate. She " could not defeat the rights of creditors, nor relieve the commu- " nity from the charges of administration. Her vendee would " take the estate subject to those rights, and burdened with those " charges." The right of administration depends upon its neces- sity; the rights of creditors only can take away the title from the heir; and now, if no such right be set up against the title

of the heir, or one claiming under him, who shall gainsay his title?

If there were only sufficient assets to pay the debts of the estate of R. T. Matson, a court of equity would not suffer the title of Halbert to be disturbed until every dollar of the assets had been applied to the payment of the debts; and when the debts were paid, certainly there would be no necessity to disturb his title; nor is there any necessity or law for disturbing it, so long as there are plenty of assets in the hands of the administrator to pay all the debts.

The judgment of the District Court is affirmed.

Affirmed.