### COMSTOCK v. LOMAX et al.†

(Court of Civil Appeals of Texas. Feb. 15, 1911. Rehearing Denied March 1, 1911.)

1. JUDGES (§ 56*)—DISQUALIFICATION—SUBSEQUENT ACTS OF OTHER JUDGE.

Though the judge who granted the order for issuance of a writ of certiorari and approved the bond was disqualified by interest, and therefore the order and bond were void, yet another and qualified judge having presided when motion to dismiss the proceeding was made, and he having made an order allowing the filing of a new bond, which he approved, and made an order adopting and continuing in force the writ theretofore issued, this was in effect an approval of the application for the writ and an authorization of the writ, and relieved the proceeding of objection on account of the disqualification of the first judge.

[Ed. Note.—For other cases, see Judges, Dec. Dig. § 56.*]

2. CERTIORARI (§ 1*)—PROBATE SALES—REVIEW BY CERTIORARI.

Certiorari to review a proceeding of the county court in probate matters is not a writ of right, in the sense that the proceeding will be revised for errors as on appeal; but relief is only granted in such case when it is made to appear that the proceeding is void, or that some substantial wrong and injustice to the estate has been done.

[Ed. Note.—For other cases, see Certiorari, Cent. Dig. § 1; Dec. Dig. § 1.*]

3. INSANE PERSONS (§ 71*)—GUARDIAN'S SALE UNDER ORDER OF COURT—PRIOR AGREEMENT.

It is not ground for setting aside, on certiorari, the sale of an insane person's land by her guardian under proceedings in the county court, that there was a previous agreement between the guardian and the purchaser for the sale; it not having amounted to an agreement for sale to such person regardless of a purchaser being found who would give a better price, but only to negotiations to secure a purchaser at a certain minimum price, which was all the property was worth, and all that could have been obtained for it; and such arrangement

not having caused the guardian to abandon or relax his efforts to sell to others.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 71.*]

4. INSANE PERSONS (§ 71*)—GUARDIAN'S SALE OF LAND—INSUFFICIENT CASH PAYMENT.

That the terms of a sale by the guardian of an insane person's improved property, under proceedings in the county court, were one-fifth cash, while the statute provides for one-third cash, is not ground for setting aside the sale, it being clear that the ward was not injured thereby.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 71.*]

5. INSANE PERSONS (§ 71*)—GUARDIAN'S SALE UNDER ORDER OF COURT—INADEQUACY OF PRICE.

To authorize setting aside, on certiorari, the sale of an insane person's property by her guardian under proceedings in the county court, on the ground merely of inadequate price, it would be necessary to show that the inadequacy was so pronounced as to shock the conscience.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 71.*]

6. INSANE PERSONS (§ 71*)—GUARDIAN'S SALE UNDER ORDER OF COURT—INADEQUACY OF PRICE—EVIDENCE.

Evidence on certiorari to set aside proceedings of the county court concerning and resulting in a sale by a guardian of an insane person's land, held insufficient to raise the issue of a sale at a grossly inadequate price.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 71.*]

7. GUARDIAN AND WARD (§ 89*)—SALE OF WARD'S PROPERTY—NECESSITY—EVIDENCE.

Though Sayles' Ann. Civ. St. 1897, art. 2653, provides for application by the guardian to the county court for sale of "a sufficient amount of real estate" to pay the debts of the ward's estate, evidence that one acre would have sold for enough, is insufficient to negative the finding of such court of necessity for sale of the entire tract, so as to authorize setting aside of the sale; the tract being small and undivided, so that it might be more advantageous to the estate to dispose of it as a whole.

[Ed. Note.—For other cases, see Guardian and Ward, Dec. Dig. § 89.*]

8. HOMESTEAD (§ 18*)—PERSONS ENTITLED—HEAD OF FAMILY.

Property owned by one who has been divorced and has no children, so that the family consists of her alone, is not her homestead.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 22–27; Dec. Dig. § 18.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Certiorari by Melissa T. Comstock against Alice Lomax and others. Judgment for defendants. Plaintiff appeals. Affirmed.

This case was here on appeal once before and remanded. Lomax v. Comstock, 50 Tex. Civ. App. 340, 110 S. W. 762. It is a proceeding by certiorari in the district court to revise and set aside the proceedings of the county court concerning the sale of certain land by the guardian of the estate of Melissa Comstock, a person non compos mentis (who was afterwards declared sane) to Alice Lomax, and to require the Rio Grande Valley Bank & Trust Company to deliver

to Alice Lomax and her husband five purchase-money notes given in part payment for said property and to require Alice Lomax and her husband to accept from appellant the amount of the cash payment made by them and to require said Bank & Trust Company to pay over to Mrs. Lomax and her husband the sum of $151.83, and to require Mrs. and Mr. Lomax to account for rents of the property, and praying that the title to the land be established in appellant and for general relief. The pleadings were the same as on the former trial, with some supplemental pleadings. The pleadings are lengthy, and no question is raised affecting their sufficiency. Therefore, they will not be stated, unless in connection with the assignments of error it may be necessary to do so. The verdict and judgment were in favor of the defendant Mrs. Lomax.

A question is presented by appellee, who insists by cross-assignment that the court erred in overruling appellee's motion to dismiss the case upon the ground that the district judge who granted the original order for the writ of certiorari to issue and who approved the bond, was disqualified by reason of being a stockholder in the Rio Grande Valley Bank & Trust Company; one of the defendants in the application for the writ, said Bank & Trust Company being afterwards dismissed from the case. Judge J. M. Goggin, the district judge who entered the order for the writ, and who fixed the amount of the bond and approved the same, was at the time a stockholder in said Bank & Trust Company. That this interest disqualified him appears to be without doubt. The application, or petition, was filed with the clerk of the district court over which Judge Goggin presided on December 5, 1906, and on the same day his fiat was indorsed thereon ordering the writ to issue upon the execution of a bond, conditioned as the law requires, in the sum of $2,500. The bond was approved and filed that day. On June 24, 1907, Mrs. Lomax and her husband filed a motion setting up the above disqualification and praying that the order commanding the writ be set aside, and the writ, and the transcript prepared and filed pursuant to the order be suppressed, which was in effect a motion to dismiss the proceeding. On said date, June 24, 1907, Judge James R. Harper was presiding in said district court, having exchanged with Judge Goggin, and on that day it appears he entered an order allowing petitioner to file a new certiorari bond, fixing the amount thereof, which new bond was given and was approved by him, the order concluding: "It is ordered by the court that said bond this day filed be and the same is hereby approved, and it is ordered that the writ of certiorari heretofore issued in this cause be and the same is now hereby adopted and continued in force." The above motion to dismiss was presented, heard, and overruled on March 31, 1910, by Judge A.

M. Walthall, then the judge of said court, on the occasion of the recent trial. We may remark, at this place, that the case was tried after the action by Judge Harper, without the matter of the disqualification of Judge Goggin being properly presented or urged, as will be seen by reference to the opinion delivered on the former appeal. We do not state this to show that the matter was waived, but to show a reason why the court should not be too ready to bestow too favorable consideration on the cross-assignment.

Let us concede that the order and the bond made and approved by Judge Goggin were void. This did not affect the application or petition, which was filed and could be acted upon at any time. This remained on file and was on file when in some way it was brought to the notice of Judge Harper and unquestionably he had the power to act upon it. This was within the time allowed plaintiff for obtaining the writ. His action, in effect, was to approve the application, fix the bond and to authorize the proceedings of the county court certified. He ordered a bond, which was given, but instead of causing a new writ to issue, and a new transcript certified from the county court, which might have been done, he deemed this superfluous for the reason evidently that the proceedings had already been certified, and were on file in the court in which he was sitting. We think the proceeding substantially and completely had the effect of relieving the case of any objection to the proceedings based on the ground of the disqualification of Judge Goggin. We think parties to this character of proceeding could by consent dispense with the writ altogether and bring to the district court the transcript and adopt it for the purposes of the hearing, if they saw proper. After Judge Harper made his order, the case was tried on the petition and transcript on file, and it was not until after the cause had been appealed and remanded and came on again for trial before Judge Walthall, that the motion to dismiss the proceeding on account of Judge Goggin's disqualification was presented to be acted upon. We regard the cross-assignment as without force.

Patterson, Buckler & Woodson, for appellant. Joseph M. Nealon, M. W. Stanton, and Jones & Jones, for appellees.

JAMES, C. J. (after stating the facts as above). The writ of certiorari to annul proceedings of the county court in probate matters is not a writ of right in the sense that the proceeding will be revised for errors as on appeal. Relief is only granted in such cases when it is made to appear that the proceeding is void, or that some substantial wrong and injustice to the estate has been done.

The first assignment of error complains of the refusal of the following peremptory instruction: "You are instructed to return a

verdict in the plaintiff's favor for the land sued for, and you will find for defendants, Alice Lomax and John Lomax, her husband, in the sum of $947.02 and interest on same from November 13, 1905, at 6 per cent. per annum up to the present time; and also find in favor of said Lomax and his wife for the enhanced value of the land in consequence of their improvements on same (that is, for the difference between the value of the land on December 5, 1906, without the improvements placed by them on same between November 13, 1905, and December 5, 1906, and the value of the land with such improvements on same); and you will further find in plaintiff's favor against said Lomax and his wife for the rental value of said land, to wit, the value of the use of said land as the same existed on November 13, 1905, as shown by the evidence, up to the present time." The assignment is that the charge should have been given because the undisputed evidence showed that the guardian's sale was really made to carry out a previous agreement between the guardian and the defendants Lomax, the price of the land having been agreed on, and that the application and order of sale were obtained for the benefit of said defendants to carry out such previous agreement, and this being so Mrs. Lomax and her husband were affected by each and all the irregularities in the proceedings under which the sale was made.

The assignment proceeds upon the theory that the irregularities alone were not enough to require the sale to be set aside; and that this rule is correct seems to be well settled. Kendrick v. Wheeler, 85 Tex. 253, 20 S. W. 44; Lomax v. Comstock, 50 Tex. Civ. App. 340, 110 S. W. 762. The irregularities shown are all of such character as not to entitle plaintiff to be relieved, unless, in connection with them, it appears that a disadvantageous sale was effected. On the former appeal we remanded the cause (the trial court having directed a verdict) because, under the testimony in that record, the question should have been submitted to the jury whether or not such previous agreement, if any, had the effect of interfering with the obtaining of a better price for the property. This matter was submitted and determined at the recent trial, in favor of the sale.

Instead of discussing here the matter of such previous agreement, arrangement, or negotiation, whichever it was, we refer to the discussion thereof in the former opinion, a repetition of which is unnecessary. In deference to the verdict we conclude as a matter of fact from the testimony in the present record that the transaction between the guardian or the county judge and Mrs. Lomax prior to the sale and with it in view, did not amount to and was not intended to be an agreement for the sale of the property to Mrs. Lomax, regardless of better purchasers, or opportunities; that it was nothing more than negotiations on the part of the guardian to secure a purchaser at a certain minimum price, which price was in fact, at the time of the sale, all the property was worth, and all that could have been obtained for it; and further that such arrangement did not cause the guardian to abandon or relax his efforts to sell the property to others. Under this condition of facts the charge was properly refused.

The second assignment complains of the refusal of this charge: "The evidence in this case shows that the land involved in this case was improved property at the time the order of sale was made, November 6, 1905, and was sold in contravention of the statute requiring at least one-third of the purchase price to be paid in cash, and was sold without proper service of notice upon the application for its sale, and without an application such as the law requires, showing the condition of the estate in so far as personal property was concerned. And you will return a verdict in favor of the plaintiff for the land sued for and find as to value of the defendant's improvements and the rental value of the property and the $947.02 and interest as instructed in the court's general charge."

Except for the first matter stated in the assignment, we may dismiss a discussion of it with the remark that the alleged defect in the notice, and in the application, will not operate to nullify the sale, in view of what is said under the preceding assignment as to the prior agreement or understanding, and the adequacy of the price obtained. The first-mentioned matter is that the property was improved property and the statute required at least one-third of the appraised value to be paid in cash, which appraised value was $400 per acre (the price for which it was sold to Mrs. Lomax) whereas the sale was for one-fifth cash, consequently contrary to law. An investigation of the evidence clearly discloses that if this was improved property in the sense of the statute no injury has resulted to plaintiff by the taking of less than one-third cash payment. The evidence is substantially the same as it was in the former record, and we here adopt what we said on this question in the opinion delivered on that appeal. Lomax v. Comstock, 50 Tex. Civ. App. 340, 110 S. W. 764.

The third assignment complains of the refusal of a charge in effect that if the jury believed that the guardian agreed beforehand that he would sell the land to Mrs. Lomax, after he should obtain an order of sale, and received $100 upon such agreement and that the sale made was to carry out such agreement, to find for plaintiff. This was properly refused. The court gave what was a proper instruction on the subject in giving plaintiff's special charge No. 8.

The fourth assignment complains of the refusal of a charge in effect, that if the jury believed that the land was sold by the guardian to Alice Lomax or her husband at a grossly

inadequate price to return a verdict for plaintiff for the land and for defendant Lomax for a certain sum and interest, and for the enhanced value of the land by reason of defendants' improvements, etc. We have held that the simple fact that property of an estate is sold for a grossly inadequate price, is not such a wrong or injustice that would require the sale set aside in a certiorari proceeding. Clopper v. Hutcheson, 16 Tex. Civ. App. 157, 40 S. W. 604. Certainly the proof in such a case would have to be such as to show that the inadequacy was so pronounced as to shock the conscience. The proof in this record is not of that character. The opinion testimony of many witnesses was taken as to the market value of this property at the time of the transaction in November, 1905. All the witnesses, with a few exceptions, testified that $400 per acre was its full value. The exceptions as pointed out by appellant's brief are the witnesses Coles, C. B. Stevens, Austin, H. B. Stevens and J. A. Happer and Hadlock. Coles stated that the reasonable market value during November, 1905, "was between $700 and $800 per acre, * * * not for farming purposes, * * * but worth that on the market as a speculation; that he thought about speculating on it himself, and thought it would get to be worth that. * * * The property was then used for farming purposes, and is now used for that purpose." He did not know the value of that land for farming purposes in 1905. To be used as city property it would have to be sold in lots. In his judgment the property could have been sold at that time for between $700 and $800 if it had been divided up into lots. It is evident that the opinion of this witness was based on a condition of the property that did not exist at the time. Besides a witness testified that to subdivide, advertise, and work town-site property and sell same would take 35 or 40 per cent. and this was uncontradicted. Considering the testimony of Coles in the light of this uncontradicted testimony, the price obtained for the property as it stood and was conditioned at the time was approximately its value.

C. B. Stevens testified that the value was about $650. That if you are going to use the property for town-site purposes, it would be necessary to give part of it in dedicating streets and alleys, and it would cost something to market the property. It would have to be surveyed, platted, advertised, and commissions would have to be paid on sales. The land was a half a mile or so beyond the car line. If the soil was adobe it would change his opinion as to the market value. The evidence showed the land to be of that character. The testimony of this witness, like that of Coles', failed to show that it was sold for substantially less than its value.

Austin testified that the land was worth in November, 1905, from $700 to $750 an acre. As farming land it would be worth $300 an acre. He would not have paid $400 for it as farming land. The value he placed on the land is what he figured could be gotten out of it on a speculation.

H. B. Stevens stated that the value was between $700 and $800 an acre. The value he placed on it was for speculation purposes, putting it into lots, subdividing it and selling it out. He was placing this value on it divided into lots and blocks, not in acres.

Happer and Hadlock placed the value at about $750 and $800 an acre. They did not state whether their valuation was based on the property as it stood, or as divided into lots and blocks, or with reference to speculation in the future. Happer states that he based his opinion upon what property in the neighborhood was selling for, but the sales of property he was referring to were made after this sale took place.

Taking all the testimony relied on by appellant as tending to show this property was sold for a grossly inadequate price, it falls short of fairly raising such an issue, and the court properly refused to consider or submit the setting aside of the sale on that ground.

We are of opinion that the mere fact that the property was sold for an inadequate price did not require the sale to be set aside. As already stated, a grossly inadequate price might have had that effect. The county court was there to see that the price was a fair one and its judgment based on testimony taken at the time is entitled to some weight. A slight or reasonable disparity between the value of the land and what it brought, not produced by some misconduct on the part of the purchaser or guardian, ought not to be allowed to annul the sale. The court was, therefore, right in not allowing the fact of inadequate price, of itself, to control the case, and in requiring, in order for it to have the effect of annulling the sale, that it resulted from the making of the agreement prior to the sale. We, therefore, overrule the seventh assignment of error.

The rulings referred to by the eighth and ninth assignments were not erroneous.

The tenth assignment alleges that the court erred in not allowing plaintiff to prove that in the month of November, 1905, it would have been practicable to cut off one acre of this tract and to sell it separately from the balance. Appellant's proposition is that the sale of one acre according to the price this land brought per acre would have sufficed to pay the debts of the estate, and the law provides that only sufficient shall be sold to pay the debts.

The eleventh is that the court erred in refusing to allow plaintiff to prove that one acre of the land could have been easily sold in the open market for $1,000 at the time of the sale.

Standing alone, or in connection with any of the testimony that was introduced, the

facts embodied in the two above assignments would not have required the sale to be set aside. The county judge was the person designated by the statute to determine the necessity for the sale applied for. The mere fact that an unsubdivided tract or small farm might have had a part of it cut off and sold for a sufficient sum, does not of itself negative the finding that a necessity existed for the sale of the tract. It might have been that to segregate an acre or other portion of the land, would have left the remainder in such shape and condition as to value as to render it advisable and more advantageous to the estate to dispose of it in whole for what it brought in this instance. The isolated facts sought to be proved would not have afforded a ground for annulling the sale, although it may be that such statutory provision (article 2653, Sayles' Ann. Civ. St. 1897) might be shown to have been so flagrantly violated as to require such action in the interest of right or justice.

The twelfth assignment presents the proposition that this property was homestead of the ward, Melissa Comstock, at the time of the sale, and for that reason there was no authority for its sale. Her marriage with J. H. Comstock was dissolved by decree of divorce in 1902. She and her husband had no children, and after the divorce the family consisted of herself alone. Under these conditions we held on the former appeal, in accordance with Bahn v. Starcke, 89 Tex. 203, 34 S. W. 103, 59 Am. St. Rep. 40, that it was not homestead.

No error appearing in the assignments necessitating a reversal, the judgment is affirmed.