**TANTON et ux. v. STATE NAT. BANK OF EL PASO et al.**

No. 2587.

Court of Civil Appeals of Texas. El Paso.
Nov. 12, 1931.

Rehearing Denied Dec. 3, 1931.

958

Gowan Jones and C. M. Wilchar, both of El Paso, for appellants.

O. R. Armstrong, John T. Hill, J. F. McKenzie, and H. R. Gamble, all of El Paso, for appellees.

PELPHREY, C. J., and HIGGINS and WALTHALL, JJ.

This is a suit by Tanton and wife to recover a tract of land containing about sixty-eight acres in El Paso county.

The suit was filed February 17, 1930, against the devisees of M. W. Stanton, deceased, and his independent executor, the State National Bank of El Paso, Tex. The petition was in three counts. It was alleged that plaintiff resides in El Paso county, Tex., and has been a resident and bona fide citizen and inhabitant thereof for more than twenty years prior to the filing of the suit. The first count was in the usual form of the action in trespass to try title. The second count was in the alternative and adopted all allegations in the first count not inconsistent with the second count, and pleaded specially plaintiff's record title and that the property was the homestead of plaintiff from 1911 until at least on or about August 29, 1921, at which last date plaintiff by warranty deed conveyed same to R. W. Humphrey; that plaintiff at no time has owned or acquired any other homestead; that, after the warranty deed to Humphrey, said Humphrey by and through tenants entered into peaceable and adverse possession under title and color of title and remained in peaceable and adverse possession until ejected in 1926, and pleaded the three-year statute of limitation; that Humphrey died in 1926, and in February, 1928, his heirs by warranty deed conveyed the premises to plaintiff; plaintiff denied that defendants had or ever had any right, legal or equitable, in the property, and pleaded the four-year statute of limitations against any right of defendants. The third count adopted all allegations in the first and second counts not inconsistent therewith, and in the alternative pleaded that if the court should decide that any right, legal or equitable, remained in plaintiff after plaintiff conveyed the property to Humphrey, then in that event he alleged the premises to be his homestead, not only up until the time of the deed from plaintiff to Humphrey, but until the present time.

Tanton acquired the land in 1910. In January, 1921, Tanton's wife divorced him. By warranty deed dated August 20, 1921, filed for record August 29, 1921, Tanton conveyed the land to R. W. Humphrey. In this deed Tanton is described as a single man of Logan county, Okl., where the deed was executed and acknowledged.

On August 22, 1921, M. W. Stanton filed suit in the Thirty-Fourth district court of El Paso county, against Tanton in the petition averring that Tanton was a nonresident of Texas, residing in Logan county, Okl. In the first count of the petition Stanton claimed an indebtedness of several thousand dollars due him by Tanton, and also asserted an equitable lien securing the same upon the land now in controversy. He prayed judgment for the debt and that the equitable lien of plaintiff upon the land and premises be found, established, and foreclosed to secure payment of said indebtedness, and for general relief.

By second count, in the alternative, he declared upon a quantum meruit for like amount, and prayed judgment for said debt.

An attachment was issued and levied upon the land August 31, 1921.

At the September term, 1921, judgment was rendered in Stanton's favor. The judgment recited and found due service of process on August 24, 1921, by notice to nonresident, and that defendant had failed to appear and had defaulted. The judgment shows that it was rendered after hearing the plaintiff's petition read and the evidence adduced. The judgment found and established "in favor of plaintiff, and against the defendant, an indebtedness for the said sum of $5,796.15, together with interest thereon from this date, at the rate of six per cent per annum, and it is by the Court, therefore, further ordered, adjudged and decreed, under the allegations of the petition of plaintiff and evidence, oral and documentary, that the lien of plaintiff securing the payment of said sum, interest and cost of suit, as said lien existed on the 25th day of September A. D. 1917, and upon any date or time since said date, be and the same is hereby found and foreclosed upon that cer-

tain real estate," then follows description of land here involved.

Then follows also foreclosure of the attachment upon the land; also, direction that order of sale be issued. By sheriff's deed dated November 2, 1921, all of the "right, title and interest which the said Nathan W. Tanton had on the 25th day of September, A. D. 1917, or at any time afterwards, of, in and to" the land was conveyed to Stanton for the sum of $3,952.52.

R. W. Humphrey died February 27, 1926, and by deed dated February 15, 1928, his heirs reconveyed the land to Tanton.

Upon an instructed verdict, judgment was rendered that the plaintiffs take nothing by their suit, and that the defendants go hence without day.

With reference to the deed which he executed to Humphrey on August 20, 1921, Tanton testified:

"When Stanton sued me I went to see a lawyer up there in Oklahoma and did exactly as he told me to. I went to him in Muskogee. He told me to convey the land to Mr. Humphrey ·but hold my homestead rights in the property. That is what I did, and that is what I testified to on the previous trial of this case, in substance. I had an agreement with Mr. Humphrey that he would convey the property back to me any time I wanted it. His heirs conveyed the land back to me. I did this on the advice of my lawyer. * * *

"That was in Guthrie, Logan County. I had an agreement with Mr. Humphrey when the deed was made that it was not to be a bona fide transaction, I was just placing the title in him to hold for me, and the agreement was that some time in the future he would return it—I never gave up possession of the land. I delivered the deed to him, he sent it here to put on record. I did not send it. Mr. Humphrey did not pay me anything for the deed. The bank in Oklahoma didn't send the deed nor was it escrowed. It wasn't turned back to me and I haven't testified so in previous litigation. Mr. Humphrey didn't pay me anything for the deed."

 It is well settled in this state that a deed absolute upon its face may be shown by parol to be intended as a trust. The testimony quoted shows that Humphrey held the land in trust for Tanton to be reconveyed upon request. Tanton's testimony shows that the superior equitable title remained in him. This superior title passed, by the foreclosure proceedings, to Stanton if such proceedings are valid.

Much is said by appellants in their brief about the necessity of appellees showing that the deed was in fraud of creditors, and this cannot be done because the land was Tanton's homestead, was exempt as such, and the voluntary conveyance therefore not in fraud of creditors.

Tanton contends that the land has always been his homestead and, if this be true, then the conveyance to Humphrey was not in fraud of creditors, and the trust in the land in his favor a valid one. That trust retained in him the superior equitable title to the land which passed to Stanton, and the legal title subsequently acquired by Tanton from the Humphrey heirs is now and always has been subordinate to the equitable title.

If the land was not Tanton's homestead, then the deed was fraudulent and void as to his creditor, Stanton. Tanton's own testimony so shows. Upon this phase of the case we hold that the superior equitable title passed to Stanton by the foreclosure proceedings, if these proceedings were valid, and Tanton cannot defeat this equitable title by simply showing that he has reacquired the bare legal title from the heirs of his trustee.

Passing now to the foreclosure proceedings, we will first consider the validity of the foreclosure of the so-called equitable lien.

The petition is very lengthy. It was an action for debt amounting to over $5,000, and allegations intended to show an "equitable" lien upon the land, which it was prayed be found, established, and foreclosed to secure the payment of the debt.

██ The facts alleged in the petition were insufficient to show a lien upon the land, and this feature of the petition was subject to general demurrer. But this does not subject the judgment to collateral impeachment unless the deficiency is one which affects the jurisdiction of the court and deprives it of jurisdiction. 1 Freeman on Judgments (5th Ed.) § 365; 1 Black on Judgments (1st Ed.) § 269, 34 C. J. p. 554, § 852 and p. 560, § 860; Holmes v. Buckner, 67 Tex. 107, 2 S. W. 452; Moore v. Perry, 13 Tex. Civ. App. 204, 35 S. W. 838; Pearson v. Lloyd (Tex. Civ. App.) 214 S. W. 759; Hart v. Hunter, 52 Tex. Civ. App. 75, 114 S. W. 882.

This matter is discussed at some length by Judge Freeman at § 365, from which these excerpts are taken:

"For jurisdiction does not depend upon the sufficiency or fullness of the statement of the cause of action pleaded, nor is it of any importance collaterally whether the pleading does or does not state a cause of action, providing it sets forth a case within the court's powers. If a cause is pleaded belonging to a general class over which the court's authority extends, then jurisdiction attaches and the court has the power to determine whether the pleading is good or bad, and to decide upon its sufficiency as a statement of a cause of action. * * *

"It would be difficult to imagine a case in which a court having jurisdiction in other respects could not render a judgment free from collateral attack, because of defects in or insufficiency of the pleading. * * * A

pleading which is adequate in bringing the subject matter before the court may be faulty in many respects, even in its averments of material elements of the cause, and yet sustain the judgment against impeachment."

This doctrine, of course, has no application to a case in which the judgment is upon a matter not raised by the pleadings. In other words, a judgment without any pleading to support it. 1 Freeman on Judgments (5th Ed.) 355; Hart v. Hunter, supra.

The petition sought to recover a debt within the jurisdiction of the district court and to foreclose a lien on land. But in this connection appellants assert that under the rulings in Higgins v. Bordages, 88 Tex. 458, 31 S. W. 52, 803, 53 Am. St. Rep. 770, and Barnett v. Eureka Paving Co. (Tex. Com. App.) 234 S. W. 1081, the court had no jurisdiction to foreclose the asserted lien because of the homestead character of the land which was apparent upon the face of the petition.

We think the allegations show that the land was a homestead at the time the lien was attempted to be impressed upon it. In this respect also it was subject to general demurrer. But the petition further shows that Tanton had been previously divorced from his wife.

"That said plaintiff further avers that after the appeal aforesaid, and after the writ of error was refused, as aforesaid, the said defendant (referring to Tanton) having long prior thereto abandoned his residence in the County of El Paso and State of Texas, his cross-bill for divorce was dismissed. * * *"

The petition also averred "that said defendant Nathan W. Tanton, resides in town of Guthrie, County of Logan and State of Oklahoma, and is now a non-resident of the State of Texas."

The plain import of the petition is that the homestead character of the land no longer existed at the time the suit was filed because of abandonment.

In the Higgins and Barnett Cases the homestead character of the land, at the time the lien was attempted to be fixed, and when the foreclosure suits were filed, was apparent upon the face of the petition, and it was held that for this reason the court had no jurisdiction to foreclose the liens. The defect in the pleadings was jurisdictional.

The present case is more like Gehret v. Hetkes (Tex. Civ. App.) 16 S.W.(2d) 395; Id. (Tex. Com. App.) 36 S.W.(2d) 700, 701. In that case Hetkes obtained a judgment of foreclosure against Gehret and wife upon a paving lien. The Gehrets later sought to enjoin the foreclosure sale upon the ground that the land was their homestead and the judgment void in so far as it foreclosed a lien against the property. In denying the relief sought, it was said by the Commission of Appeals:

"Neither the petition, citation, nor judgment contains any intimation that the property was Gehret's homestead; it appears from the record itself that the court had jurisdiction of the parties to, and the subject-matter of, the suit. The judgment is therefore not void.

"A voidable judgment is one rendered by a court having jurisdiction but which was irregularly and erroneously rendered. Such a judgment is valid until vacated by a direct proceeding instituted for that purpose or until reversed on appeal or writ of error. Murchison v. White, 54 Tex. 78; Wheeler v. Ahrenbeak, 54 Tex. 535; Odle v. Frost, 59 Tex. 684; Buchanan v. Bilger, 64 Tex. 589.

"Whether a judgment of a court of record is void or voidable must be determined from an inspection of the record. If the record discloses that the court rendering such judgment was without jurisdiction, the same is void and open to attack in a collateral proceeding; if it does not, the judgment is merely voidable and can be attacked only in a direct proceeding. Morris v. Halbert, 36 Tex. 19; Maury v. Turner (Tex. Com. App.) 244 S. W. 809; Ringgold v. Graham (Tex. Com. App.) 13 S.W.(2d) 355.

"Higgins v. Bordages, 88 Tex. 458, 31 S. W. 52, 55, 803, 53 Am. St. Rep. 770, and Barnett v. Eureka Paving Co. (Tex. Com. App.) 234 S. W. 1081, 1082, cited by plaintiffs in error, are not in conflict with the rule announced above. In both those cases want of jurisdiction appeared upon the face of the record.

"This is apparent in the quotation from Judge Brown's opinion in the Bordages Case, wherein he said, 'These facts, showing want of jurisdiction of the subject-matter of the suit, appeared upon the face of the record'; and from Judge Kittrell's opinion in the Barnett Case, discussing the question that the petition showed on its face that the property in question was defendant's homestead, wherein he said, 'It is but juggling with words to say that it did not appear in the original suit that foreclosure of the lien was sought against a homestead,' and 'the very terms of the decree itself show that the court was dealing with the property as homestead property.'

"It is plain from those quotations that in both said cases the records affirmatively showed the lack of jurisdiction over the subject-matter, whereas here the record in the judgment attacked is silent on the subject of Gehret's homestead claim.

"We think that the original judgment is not void, but only voidable at most, and the term of the court at which it was rendered having expired, it could be set aside only by bill of review brought by Gehret and wife.

Gross v. McClaran, 8 Tex. 341; McKean v. Ziller, 9 Tex. 58."

In Nichols v. Dibrell, 61 Tex. 539, Chief Justice Willie said:

"The only question then is, ·Was the homestead right such a defense as might have been put in issue and decided in the former action? * * *

"The homestead right is not of a character to make it an exception to the rule we have announced as to the plea of res judicata. It has been frequently attempted in this state to exempt it from the operation of the rule, but it has always been held that when it might have been pleaded in the former suit it was too late to set it up in the latter. Thus, where a mortgage has been foreclosed upon the homestead and a second suit has been brought by the purchaser at the mortgage sale, it is held that it is too late to set up the homestead right as a bar to the last action. See authorities already cited."

And in Shonaker v. Citizens, etc. (Tex. Civ. App.) 8 S.W.(2d) 566, 568 (writ refused) it was said:

"The homestead exemption does not arise as a matter of right, so as to preclude any action against property so impressed upon the mere showing that it is in fact homestead. It is an exemption or right that may be waived at the option of the party entitled to the exemption or right. That being true, it is incumbent upon a party desiring to avail himself of the homestead exemption to plead fully its homestead character, as is held by the authorities last above cited, otherwise he cannot avail himself of such homestead right or exemption."

See, also, Colwick v. Wright (Tex. Civ. App.) 275 S. W. 152, Sweet v. Lyon, 39 Tex. Civ. App. 450, 88 S. W. 384, and Guarantee, etc., v. Nelson (Tex. Civ. App.) 223 S. W. 543.

In this connection it perhaps should be noted that the petition in the foreclosure suit was not offered in evidence. It was incumbent upon appellants to show that the record in that suit disclosed the homestead character of the land. Otherwise they could not come within the doctrine of the Higgins and Barnett Cases. Gehret v. Hetkes, supra. But appellants' failure to offer such petition in evidence is unimportant in view of the fact that it is pleaded and attached as an exhibit to defendants' answer in this suit. LaField v. Maryland C. Co., 119 Tex. 466, 33 S.W.(2d) 187. At any rate, we have looked to the petition as it appears in the clerk's transcript as an exhibit to appellees' answer for the purpose of considering and determining the merits of appellants' contention that the Higgins and Barnett Cases are here applicable. It is only by so doing that we can consider that contention.

Upon the authorities cited, we hold that the judgment foreclosing the lien claimed is not impeachable in this collateral proceeding.

The validity of the judgment foreclosing the attachment lien is controlled by other considerations.

In that connection appellants invoke the rule that the foreclosure of an attachment lien does not preclude the later assertion of a homestead estate in the land. This is well settled where the homestead issue was not raised in the attachment suit by the pleadings of either party. Cline v. Niblo, 117 Tex. 474, 8 S.W.(2d) 633, 66 A. L. R. 916.

Tanton was married three times. The first wife divorced him in 1886. By her he had one daughter, who married and lived in Oklahoma. This daughter died in the fall of 1921 leaving two children about 12 and 13 years old. The record shows no other children.

His second wife he married in 1911, and he had no children by her. This wife divorced him in January, 1921. Some years later he married the present Mrs. Tanton. He was unmarried during the foreclosure proceedings.

With reference to the right of a divorced man to the homestead exemption when the effect of the divorce is to deprive him of the status of being the head of a family, Chief Justice Gaines, in·Bahn v. Starcke, 89 Tex.· 203, 34 S. W. 103, 105, 59 Am. St. Rep. 40, said:

"The divorce destroys the particular family, the existence of which gave the right of exemptions; and hence destroys the right of homestead as to that family. Two new families may be created by a divorce dissolving the bonds of matrimony, or they may be created by the subsequent marriage of the parties. Such families would each have a right of exemption, but it proceeds from the existence of the new relation, and not from that of the old. It follows, we think, that if there exists any authority for holding that the exemption passed to the wife in this case, it must be found in the sections of the constitution which are hereinbefore quoted. Section 50 exempts 'the homestead of a family,' and the general rule is, 'no family, no homestead.' Wap. Homest. 71. Section 52 provides for the event of the dissolution of the family by the death either of the husband or wife, but makes no provision for the case of divorce. In neither, therefore, do we find anything to indicate that any exemption in favor of either a divorced wife or a divorced husband was intended to be recognized. The words 'homestead of a family' have a well-defined meaning, and are not open to a construction which would include the homestead of a single person without a family."

In Jackson v. Jackson (Tex. Civ. App.) 283 S. W. 923, 924, it was said:

"If said property was appellant's homestead at the time the divorce was granted, and if said property continued to be homestead property from the date the divorce was granted—in other words, if the granting of the divorce did not destroy the family entitled to be protected in the use of the homestead—then appellant's proposition would be correct. Barber v. Barber (Tex. Civ. App.) 223 S. W. 866, and cases there cited. But we think the question sought to be raised here is not involved in this case. There is no evidence that there were any children, the issue of the marriage of appellant and appellee, nor that either of them had any children, the issue of any prior marriage. While appellant and appellee were husband and wife, they constituted a family, and the property involved was exempt to them as a homestead, but immediately on the granting of the divorce dissolving the marriage relation, they, having no children, each became single persons, and neither was entitled to any homestead exemption. Bahn v. Starcke, 89 Tex. 203, 34 S. W. 103, 59 Am. St. Rep. 40, and cases there cited."

See, also, Lomax v. Comstock, 50 Tex. Civ. App. 340, 110 S. W. 762, and Id. (Tex. Civ. App.) 135 S. W. 185. (Writ refused on second appeal.)

Appellant asserts that under the rulings in Woods v. Alvarado State Bank, 118 Tex. 586, 19 S.W.(2d) 35, Dorough v. Panse (Tex. Civ. App.) 24 S.W.(2d) 69, and Central Life Assur. Soc. v. Gray (Tex. Civ. App.) 32 S.W. (2d) 261, Tanton did not lose his homestead exemption upon his divorce in January, 1921.

The opinion in the Woods Case is by Chief Justice Cureton, and in our opinion it does not overrule the authority of Judge Gaines' opinion in Bahn v. Starcke, upon the present facts. The distinguishing feature of the Woods Case is disclosed in the first paragraph of the opinion. It is as follows:

"At the time of the divorce decree the plaintiff in error *Woods had two minor children, who, though awarded to their mother, continued to live with him,* and for the support of whom, whether living with him or not, he was at all times liable. *Plainly he continued to be the head of a family,* and as such entitled to all the homestead privileges and rights granted by the Constitution and laws of the state. Hall v. Fields, 81 Tex. 553, 17 S. W. 82; Speer & Goodnight v. Sykes, 102 Tex. 451, 119 S. W. 86, 132 Am. St. Rep. 896; Zapp v. Strohmeyer, 75 Tex. 638, 13 S. W. 9; Shook v. Shook (Tex. Civ. App.) 145 S. W. 682." (Italics ours.)

Later in the opinion it is expressly recognized that it does not conflict with the Bahn Case.

The decision in the Woods Case rests upon the fact that, although Woods was divorced, his status as the head of a family was not destroyed because his two minor children continued to live with him and were supported by him.

That was not the case with Tanton. He was about 62 years old when he was divorced in 1921 from his second wife. Tanton testified:

"I must have been in Oklahoma at the time of the filing of this suit. I had a telegram saying my daughter was about to die of cancer. That was in 1921 I went to her. My home then was down at Clint on the same property. My daughter was in Colorado and the doctor told me I would have to move her back to Guthrie, Oklahoma, which I did. I suppose I was not up there more than a month when I came back here; then my grandson wrote me his mother was worse and I went back and was up there off and on then all the year. My daughter died, leaving two grandchildren. * * *

"I went to Oklahoma in 1921 to see my daughter; she was married; I don't keep up with her husband, I suppose he is living in Oklahoma; one child lives in Mississippi, the other in Colorado; both are married, married since their mother died in 1921."

By bill of exception it is shown that "while the witness N. W. Tanton was testifying, the plaintiff was questioning said witness about his grandchildren, one of them being fourteen years of age and the other eleven, and the plaintiff offered to prove that said grandchildren were dependent upon the plaintiff for support and that the plaintiff at said time was contributing to their support, and that the mother of said children at said time, to-wit: before the filing of the suit of Stanton v. Tanton, was on her deathbed, to which said evidence counsel for the defendants objected and the Court sustained said objections, and the plaintiff excepted to said ruling and stated to the Court that plaintiff could prove and would prove that said grandchildren were being partially supported by plaintiff and that he was at said time contributing to the support of said grandchildren."

The bill was qualified "with this explanation that neither the said grandchildren nor their mother had ever been in Texas and both of the parents were living at the time referred to and the children were with them."

■ We do not regard the testimony given or that excluded as sufficient to show that Tanton remained the head of a family at the time he was divorced in 1921. Tanton's married daughter in Oklahoma, and their children, were the constituent members of another family residing in another state. 29 C. J. 800; Andrews v. Hagadon, 54 Tex. 571; Roco v. Green, 50 Tex. 483; Davis v. Cuthbertson (Tex. Civ. App.) 45 S. W. 426; Hammond v. Pickett (Tex. Civ. App.) 158 S. W. 174.

Central Life Assur. Soc. v. Gray, supra, is no more in point upon the issue of the homestead

exemption after the divorce than is Woods v. Alvarado State Bank, upon which it is based, but Dorough v. Panse, supra, by the Sixth Court of Civil Appeals, supports the view that the homestead remained exempt after the divorce, although Tanton ceased to be the head of a family when the divorce was granted. The Woods Case is cited by that court in support of such ruling.

So far as we are advised, no writ of error was applied for in the Dorough Case.

It may be that the Woods Case supports the ruling that was made in the Dorough Case. But it is the imperative duty of this court to follow the rulings of the Supreme Court until such rulings are by that court expressly or by necessary implication overruled or limited.

In the Woods Case Chief Justice Cureton expressly recognized that the Bahn Case decided a different question. Bahn v. Starcke has not been expressly overruled, nor, as we view it, is that the necessary inference to be drawn from the Woods Case.

The Bahn Case was decided 35 years ago. It has been followed in other cases and frequently cited. It announced a property rule. In this connection we quote the distinguished Chief Justice Gaines again. In Whitmire v. May, 96 Tex. 317, 72 S. W. 375, he said:

"The Court of Civil Appeals held that the case was ruled by the decision in Buchanan v. Monroe, 22 Tex. 537. There it was decided that where a mortgagor has sold the mortgaged premises, and the purchaser has died before foreclosure, the power of sale given in the mortgage is revoked, so long as an administration is pending. When we granted the writ, we concurred in the view that Buchanan v. Monroe was decisive of the question, but we are not inclined to follow that ruling. So far as we have been enabled to discover, although that case was decided more than 40 years ago, the precise point has never been again presented to this court. The case has, however, been frequently cited, and always with approval. If it were an original question, we should be inclined to hold that the death of a purchaser of property subject to a mortgage with a power of sale neither revokes nor suspends the power, but that the trustee may proceed to sell in the same manner as if the death had not occurred. But in view of the long lapse of time since Buchanan v. Monroe was decided, and of the fact that it has never been overruled or questioned, we feel constrained to hold that it has become an inflexible rule of property, which it is the duty of the courts in this state to uphold. The

rule is unsatisfactory to us, for the reason that it seems unjust that the mortgagor, by a sale of the property, should have the power to put the mortgagee in a position where his rights may become impaired by the death of the purchaser."

So now we follow Bahn v. Starcke, because in our opinion the doctrine of that case applies in view of Tanton's divorce, leaving him without a family of which he remained the head.

It is, of course, within the province of the Supreme Court to apply the ruling in the Woods Case to the present case, but we do not think this court can rightfully do so.

It is insisted appellees cannot assert their equitable title until they have first set aside the deed from Tanton to Humphrey and their right so to do is barred by the four-year statute of limitations. This is untenable, and the cases cited in this connection have no application. Appellees here are the defendants and have acquired the equitable title, which is superior to the legal title. It is an equitable title as distinguished from a mere equitable right of rescission or cancellation.

If Humphrey had sued Tanton for the land, the latter could have defended by showing that Humphrey held the land in trust for him. Appellees have succeeded to this title and right of Tanton, for it is well settled that an equitable title as distinguished from a mere equitable right is sufficient to support the action of trespass to try title. See cases cited in 16 Michie Digest 608. And under their plea of not guilty appellees could prove the superior equitable title vested in them. Article 7373 Vernon's Ann. Statutes and cases cited in Note 6.

What has been said directly or by necessary inference disposes of all questions raised by appellants.

Since we are of the opinion that the superior equitable title passed to Stanton by the foreclosure proceedings, it becomes unnecessary to consider the defenses of res judicata and estoppel set up by appellees arising out of the pleadings and judgment in the former suit of Tanton v. State National Bank (Tex. Civ. App.) 277 S. W. 449, independent executor of the estate of M. W. Stanton, deceased, in which Tanton unsuccessfully attempted to set aside the judgment of foreclosure and sheriff's deed under which appellees claim. See Tanton v. State National Bank, Executor (Tex. Civ. App.) 277 S. W. 449.

Affirmed.