## SWAIM et al. v. COX et al.
### No. 8951.

Court of Civil Appeals of Texas. Austin.

July 24, 1940.

Walter Miller and James K. Evetts, both of Belton, for appellants.

Cox & Brown, of Temple, for appellees.

BLAIR, Justice.

Appellant, Mrs. Elizabeth Willerson Swaim, joined pro forma by her husband, sued appellees, Mrs. Pearl Cox and her husband, in the statutory form of trespass to try title to establish the boundary line to a 6-acre tract of land, and also asserted title thereto under the 3, 5, 10 and 25-year statutes of limitations. Appellees answered by a plea of not guilty, and by cross-action asserted title to the 6-acre tract under the 3, 5, 10 and 25-year statutes of limitations. A trial to the court without a jury resulted in judgment for appellees for title and possession of the land, and decreeing its true boundary line to be as described in the deed to appellees; hence this appeal.

The facts as to the titles of the respective parties are as follows:

Wm. H. Carroll and his wife are the agreed common source of title. By deed dated October 14, 1874, filed for record October 16, 1874, they conveyed the 6-acre tract to R. A. White and others, describing it by metes and bounds. Fourteen years later Carroll and wife, by deed dated October 13, 1888, filed for record March 15, 1919, conveyed to R. A. Grimes a tract of land described as follows: "All that certain tract or parcel of land situate, lying and being in the County of Bell, State of Texas, more particularly described as follows, to-wit: It being about 12 miles N. of

the town of Belton in Bell County, State of Texas, it being 417 acres, more or less, excepting 40 acres sold off. to Thomas Nowlin on the N. side of said 'sur. Also 12 acres, more or less sold to Silas Baggett now owned by R. T. Willerson and also 8 acres sold to the widow White and deed to her heirs; said land is situated west of Leon River and S. of Owl Creek known as a part of the R. P. Forbes one-third of a league."

By deed dated September 17, 1901, filed for record September 18, 1901, R. A. Grimes and wife conveyed to R. T. Willerson a tract of land described as follows: "All the S. half of the R. P. Forbes ⅓ League, S. of Owl Creek and W. of Leon River, except 40 acres sold to Thomas Nowland on the N. end, also 12 acres sold to Silas Baggett, now owned by R. T. Willerson, and 8 acres sold to Mrs. White and deeded to her heirs; being 357 acres more or less."

In 1919, R. T. Willerson employed S. D. Hanna, the county surveyor, to make and file field notes to the tract of land which he had purchased from Grimes and wife; which field notes the trial court found were erroneous as to the boundary line between the land of Willerson and the 6-acre tract which adjoined the Willerson tract on the north. After the death of R. T. Willerson his daughter, appellant, acquired title to his land under a deed from his heirs, using the same erroneous Hanna field notes for description of the land.

The Nowlin 40-acre tract, specifically excepted from the aforementioned conveyances, has been by mesne and regular chain of conveyances conveyed to the present owners of the Nowlin tract; all of which conveyances have been duly recorded. The 6-acre tract in suit, which was the 8 acres conveyed to R. A. Cox and others in 1874, specifically excepted from the above-mentioned conveyances, has been by mesne and regular chain of conveyances conveyed to appellees; which conveyances have been duly recorded.

Under the above facts, the trial court found that the record title to the 6-acre tract was in appellees, and having also found under the facts that neither of the parties had title thereto under any statute of limitation, accordingly rendered judgment for appellees upon their record title, it being senior and superior to appellant's claim of title under the general grants which specifically excepted the 6-acre tract.

By five propositions, appellant makes two contentions for a reversal of the judgment of the trial court. The first contention is that the evidence established a matured limitation title in favor of appellant under both the 3 and the 10-year statutes of limitations, which could not be defeated by the record title of appellees.

The limitation title sought to be established by appellant began to run in 1898 when her predecessor in title, R. A. Grimes, enclosed about one-half of the 6-acre tract with his adjoining larger tract by a fence. This fence was sold either by R. A. Grimes or R. T. Willerson to C. N. Knight, who took it down some time before 1905; and in doing so he cut down a chestnut-oak, bur-oak, or pin-oak tree that marked the boundary line of the 6 acres, and about which witness testified that "Uncle Bob Grimes" complained, because it was a bearing tree. From these facts the trial court could have concluded that the boundary line fixed by the fence was abandoned and could have also concluded that in complaining of the cutting down of the oak tree he recognized the corner described in the deed to the 6-acre tract. There was other evidence to the effect that in 1907 some sort of survey, not by an official surveyor, was made of the Willerson tract for the purpose of making a contract to cut the timber off of the Willerson tract; and that it was cut up to the line where the old fence built by R. A. Grimes was situated.

The only other evidence on the adverse claim was the fact that S. B. Hanna surveyed the land for Willerson in 1919, and made field notes therefor which attempted to enclose 407 acres of land instead of 357 acres more or less called for in the deed; and in supporting the surveyor's field notes there was an affidavit purporting to have been signed by R. T. Willerson and J. E. Trimmier, Trimmier having purchased the 6-acre tract in 1911, to the effect that such parties had agreed upon a certain dry branch or hollow as a division line between the 407 acres of land claimed by appellant and the 6-acre tract claimed by appellees. The trial court found that no such boundary agreement was made between these parties, which matter will be later adverted to. On the other hand, several witnesses testified that they had known the 6-acre tract for a long number of years, and that they had never heard of anyone other than the owners of

it claiming title to the disputed strip. Another witness testified that R. T. Willerson also complained of the cutting down of the oak tree, which he claimed was a corner tree, and which is the tree called for in the field notes to the 6-acre tract. J. E. Trimmier testified that he purchased the 6-acre tract in 1911, his deed being then recorded; that he had known it ever since; that there was never any fence along the disputed strip since 1911; that he never recalled any fence along that line even before 1911. During all the time he owned it, no question was ever raised about its true boundary as being where it is claimed to be by appellees. The 6-acre tract was fenced by appellees in 1931, but this suit was filed before the 3-year period had run in their favor. This evidence sustains the finding and conclusion of the trial court that neither party had title under any statute of limitation.

■ Appellant does not brief any claim of title under either the 5 or the 25 years' statutes of limitations; but contends that the facts would establish a limitation title in her under both the 3 and the 10 years' statutes of limitations. Vernon's Ann.Civ.St. arts. 5507, 5510. Obviously, the 3-year statute is not applicable, because appellant claimed under the general grant or description in the deeds to her predecessors in title, which deeds specifically excepted the 6-acre tract in suit from the conveyances; and in consequence appellant did not claim under color of title, deed, or instrument of title. Nor did appellant show either adverse or continuous possession under the 10-year statute (Art. 5510). The only adverse possession was the time a part of the 6-acre tract was under fence from 1898 until 1901. Grimes fenced it in 1898, sold the fence to Knight, who tore it down apparently before Grimes sold to Willerson in 1901, because Knight testified that "Uncle Bob Grimes" complained about his cutting the oak bearing tree at the time he tore the fence down. The only other act of possession was the testimony of the lease and cutting of timber in 1907, which was only nine years after the fencing, claimed as the beginning of the limitation period. These isolated adverse claims and possession are not the peaceable and adverse possession contemplated by Art. 5510 and Art. 5515, which states that " 'adverse possession' is an actual and visible appropriation of the land * * *." At most, appellant's claim of limitation title was predicated upon conflicting evidence, which the trial court, trying the case without a jury, concluded against her.

■ Appellant further contends that an affidavit purporting to have been made by R. T. Willerson and J. E. Trimmier, the immediate predecessors in title of appellant and appellees, respectively, established the boundary line of the 6-acre tract by agreement at the place now contended for by appellant; and that since this instrument was recorded in 1919, it could not be attacked nor disregarded by the court in absence of a plea of non est factum.

This claim is based in part upon the survey of appellant's land in 1919 by Hanna for the purpose of making and filing field notes, the land having theretofore been conveyed by general description. These field notes were found by the trial court to be incorrect; and they are clearly so, particularly with respect to the boundary line of the Nowlin 40-acre tract, and the 6-acre tract, which had its beginning point at a Nowlin corner, and both of which tracts were specifically excepted from the conveyances to and from appellant's predecessors in title. The Hanna field notes made and filed by Hanna ran across and cut off a part of the 40-acre tract, and across and cut off a part of the 6-acre tract; and the trial court found that Hanna mistakenly and erroneously stated in his affidavit and field notes that "I further certify that the 6 acres described as having been sold off the northeast corner of said lower south half of said one-third league to Mr. Trimmier was located by making a dry hollow or ravine that empties into Owl Creek and extending to the head of said hollow the division line between said six acres and this tract by agreement between Mr. Trimmier and Mr. R. T. Willerson"; because "Mr. Trimmier did not agree to any such division line as reported by the County Surveyor in said instrument above referred to." With respect to the purported affidavit, J. E. Trimmier testified, and the trial court found, in effect that Trimmier signed the affidavit to the Hanna Survey in blank; that although the notary's certificate recited that affiant acknowledged the affidavit, he did not do so, and never appeared before the notary and acknowledged same; and that appellees were not estopped by said affidavit, and that neither party was bound by it. The evidence amply sustains this finding and conclusion of the trial court.

Nor was this testimony objectionable because no sworn plea of non est factum was filed under the provisions of Art. 2010. Appellant's petition was in statutory form of trespass to try title, and appellees' answer was a plea of "not guilty." Arts. 7364, 7366, 7372, and 7373. The authorities are uniform in holding that in a suit in statutory form of trespass to try title and where the defendant pleads "not guilty," he is entitled to set up, assert and prove any defense or right which would defeat the recovery of possession by plaintiff, except limitation. McKamey v. Thorp, 61 Tex. 648; Texas Creosoting Co. v. Hartburg Lbr. Co., Tex.Com.App., 16 S.W.2d 255; Grundy v. Greene, Tex.Civ.App., 207 S.W. 964; Salazar v. Ybarra, Tex.Civ. App., 57 S.W. 303; Harrison v. MacGregor, Tex.Civ.App., 112 S.W.2d 1095; Tanton v. State Natl. Bank of El Paso, Tex. Civ.App., 43 S.W.2d 957, affirmed, 125 Tex. 16, 79 S.W.2d 833, 97 A.L.R. 1093.

The judgment of the trial court is affirmed.

Affirmed.