Ellison 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00097-CV







State of Texas, Acting By and Through the Texas 

Department of Mental Health and Mental Retardation, Appellant


v.



Charles W. Ellison, Guardian of the Estate of James L. Ellison, Appellee







FROM THE COUNTY COURT OF MILAM COUNTY


NO. 7092, HONORABLE CHARLES E. LANCE, JUDGE PRESIDING






 Appellant State of Texas acting by and through the Texas Department of Mental
Health and Mental Retardation ("TDMHMR") appeals a judgment rendered for appellee Charles
W. Ellison on two causes of action which were simultaneously tried before the trial court. The
first cause of action was an application to remove appellee as the guardian of James L. Ellison,
a resident of Mexia State School. The second cause of action was appellee's Motion for
Recognition and Exemption of Homestead in which he sought to have 200 acres of the
guardianship estate declared a rural homestead. We will affirm the trial-court judgment in both
causes.



BACKGROUND


 James L. Ellison has been a resident of Mexia State School since 1964. James has
an IQ of 17 and the capacity of an 11-month-old child. Appellee has served as James' guardian
since 1978, watching over James' estate which consists solely of 451 acres of rural property. 
Since obtaining the court's approval in December 1980, appellee has leased this property and has
consistently reported the rental income in the estate's annual accounts. TDMHMR has sought to
force the sale of this property to satisfy expenses incurred in caring for James at the Mexia State
School.

 On July 30, 1987, TDMHMR obtained an agreed judgment for $90,530, the
amount owed for James' support and maintenance during the period from January 1, 1979 through
August 31, 1983. Further, on October 28, 1987, the county court ordered that the land in James'
estate be sold in accordance with the 1987 agreed judgment. On November 5, 1991, TDMHMR
obtained another agreed judgment in the amount of $222,769.50, constituting the amount owed
for James' support and maintenance for the period of September 1, 1983 through August 31,
1990. These judgments have not been paid, and the land has not been sold.

 On January 15, 1993, TDMHMR filed its first application to remove appellee as
guardian for failure to comply with the 1987 court order to sell the property in James' estate. The
county court dismissed the application and denied relief on June 9, 1993.

 On May 17, 1994, appellee filed a Motion for Recognition and Exemption of
Homestead. In this motion, appellee requested that 200 acres of the property in James' estate be
set aside as his rural homestead. Citing numerous grounds for removal, TDMHMR responded
by filing another application to remove appellee as James' guardian on May 31, 1994. The trial
court sitting without a jury heard both of these matters on October 24, 1994. The court granted
appellee's Motion for Recognition and Exemption of Homestead, but only recognized 100 acres. 
The court also denied TDMHMR's application to remove appellee as guardian, allowing appellee
to recover his attorney's fees from James' estate.



DISCUSSION


 In its first point of error, TDMHMR claims the trial court abused its discretion in
failing to remove appellee as guardian when it was shown at trial that he committed multiple
violations of the Texas Probate Code ("Code") and failed to act in the best interests of the ward. 
Specifically, the grounds for removal asserted by TDMHMR include: (1) failure to timely act on
claims filed by the State against James' estate; (2) failure to sell the property in James' estate in
accordance with the court order; (3) mismanagement of James' estate by failure to timely file an
application for federal benefits; (4) failure to file a sworn, written report with the court when the
rural property was leased, as required by statute; and (5) interference with James' participation
in community placement programs.

 A decision which rests within the sound discretion of the trial court will not be
reversed absent a showing that it abused its discretion. Espinoza v. Victoria Bank & Trust Co.,
572 S.W.2d 816, 828 (Tex. Civ. App.--Corpus Christi 1978, writ ref'd n.r.e.). An abuse of
discretion, however, implies more than an error in judgment; the trial court's decision must be
arbitrary or unreasonable. Landry v. Traveler's Ins. Co., 458 S.W.2d 649, 651 (Tex. 1970). An
appellate court must review the evidence in the light most favorable to the action of the trial court. 
Parks v. United States Home Corp., 652 S.W.2d 479, 485 (Tex. App.--Houston [1st Dist.] 1983,
writ dism'd); Stout v. Christian, 593 S.W.2d 146, 151 (Tex. Civ. App.--Austin 1980, no writ). 
An appellate court cannot substitute its judgment for that of the trial court as long as the trial court
did not abuse its discretion. Landry, 458 S.W.2d at 651.

 TDMHMR first argues that appellee repeatedly failed to act on claims presented
against the estate by TDMHMR thus constituting grounds for removal under section 797 of the
Texas Probate Code. Section 797 provides that a claim against an estate is rejected by operation
of law if a guardian fails to allow or to reject the claim within 30 days of its presentation to the
guardian and that, if such a claim is later established, the guardian may be removed. Code § 797
(West Supp. 1996). Appellee did not allow or reject the claims presented by TDMHMR, and thus
the claims were deemed rejected by operation of law. As a result of these rejections, TDMHMR
was forced to institute suit on the claims. Appellee did, however, enter into two agreed judgments
with TDMHMR concerning these claims against James' estate and did not deny the validity of
those claims. The trial court, in its discretion under section 797, decided that appellee's failure
to act on TDMHMR's claims was not sufficient to justify his removal as guardian.

 TDMHMR next claims that appellee failed to obey a 1987 court order to sell the
land owned by James' estate which may constitute grounds for removal under Code section
761(c)(3). On May 12, 1993, TDMHMR filed its first application to have appellee removed as
James' guardian based solely on appellee's noncompliance with the 1987 court order. Such relief
was denied by the county court on June 9, 1993. Appellee testified that in December 1993,
shortly after the denial of TDMHMR's first application for removal, he entered into an agreement
with Ms. Oglesby, an attorney for TDMHMR. Appellee testified that, since entering into and in
accordance with the agreement, he has listed 351 acres of the property with two real estate brokers
as well as in the newspaper, while reserving the remaining 100 acres for James' homestead. 
Further, appellee testified that the brokers had communicated with some prospective buyers but
that nothing had materialized from such communications. The trial court was convinced that
appellee "made every good effort to sell the property as ordered by the court."

 TDMHMR also claims that appellee mismanaged James' property by failing to
timely complete applications for federal benefits. According to TDMHMR, the application for
Medicaid eligibility was sent to appellee on three separate occasions. However, appellee testified
that he only received the third application, which was sent to him through his attorney. Further,
according to appellee's testimony, he was unable to complete the application in full because he
did not have access to some of the information concerning Medicare and Social Security which
was in TDMHMR's possession. Appellee testified that he unsuccessfully attempted to contact Ms.
Oglesby at TDMHMR to obtain the missing information and that he was then forced to send her
the incomplete application with a cover letter explaining the delay as well as why the application
was not complete.

 TDMHMR next contends that appellee failed to file written reports concerning the
lease of James' property as required under Code section 845 and which may constitute grounds
for removal under Code section 761(c)(2). TDMHMR does not dispute, however, that appellee
included the lease income in his annual reports to the court. Further, the record contains
appellee's Application to Rent Real Property, a Report of Rental, and the Order authorizing such
a rental signed by the county court on December 2, 1980. Although he did not fully comply with
section 845, appellee actually filed much of the required information with the court.

 Finally, TDMHMR alleges that appellee interfered with James' progress and
participation in community programs thus harming the ward and providing possible grounds for
removal under Code section 761(c)(7). According to appellee, a group of eight or nine people
meet annually to discuss James' situation. Among others, the group consists of a nurse, a
psychologist, a social worker, a person in charge of the ward's training and, of course, appellee. 
Appellee testified that he participates and expresses his opinions in these "staffing" meetings, but
that the group as a whole evaluates James' progress and makes decisions in his best interest. At
the most recent meeting, the group decided that Mexia State School was still the best facility for
the ward. The trial court noted that "speaking one's mind when one has a legal right to speak
one's mind under the First Amendment is not interference." 

 The trial court is given full discretion over whether to remove a guardian for the
grounds listed in Code sections 761 and 797. TDMHMR, the party seeking the guardian's
removal in this case, had the burden to prove sufficient grounds. See Youngs v. Choice, 868
S.W.2d 850, 853 (Tex. App.--Houston [1st Dist.] 1993, writ denied). The trial court found
appellee "acted in every way as a reasonable, prudent guardian" and expressed concern that
TDMHMR's pursuit of litigation had become "almost a personal vendetta" against appellee. 
Because it does not appear from the record that the court's decision was arbitrary or unreasonable,
we hold that the trial court did not abuse its discretion in refusing to remove appellee as guardian
of James Ellison and overrule TDMHMR's first point of error.

 In its third point of error, TDMHMR argues that the trial court erred in granting
appellee's request for attorney's fees. According to TDMHMR, those fees, incurred during
appellee's defense against TDMHMR's second application to remove him as guardian, would not
have arisen but for appellee's own failures which caused the removal application to be filed in the
first place. In response, appellee contends that, because the trial court rejected TDMHMR's
motion to remove him, it is implicitly assumed that the attorney's fees were not the result of
malfeasance on his part.

 "A guardian is entitled to be reimbursed from the guardianship estate for all
necessary and reasonable expenses incurred in performing any duty as a guardian." Code § 666
(West Supp. 1996). As we stated in overruling TDMHMR's first point of error, it was not
unreasonable or arbitrary for the trial court to have found that appellee "acted in every way as a
reasonable, prudent guardian." We disagree with TDMHMR's contention that appellee's
attorney's fees were not necessarily incurred in the management of James' estate. TDMHMR
failed to establish adequate grounds for removal of appellee as guardian in the eyes of the trial
court, and thus, the trial court appropriately found appellee's attorney's fees to be necessary and
reasonable expenses incurred in performing his duties as guardian. Further, we acknowledge that
"[a]n opposite holding would indeed have a chilling effect on . . . others' willingness to serve as
guardian of estates or in other fiduciary capacities." Moore ex rel. Moore v. First City Bank, 707
S.W.2d 286, 287 (Tex. App.--Fort Worth 1986, no writ) (awarding attorney's fees to a guardian
under the authority of Tex. Prob. Code Ann. § 242 (West 1980)). Point of error three is
overruled.

 In its second point of error, TDMHMR claims the trial court erred in granting a
homestead exemption to James. TDMHMR argues that appellee's Motion for Recognition and
Exemption of Homestead was barred by the 1987 court order to sell James' property and that
Ellison is estopped from asserting a homestead exemption because he did not raise the issue during
the 1987 litigation. TDMHMR further points out that appellee filed an application for the sale
of real property in October 1987 and that the application described the property to be sold as 451
acres without excluding acreage for a homestead.

 In response, appellee contends that there is sufficient evidence to support the trial
court's recognition of a 100-acre homestead for James. Appellee argues that, because homestead
rights are not waivable, he maintains the power to establish a homestead on behalf of James.

 The Texas Constitution allows a person to establish a homestead thereby exempting
certain property from forced sale by general creditors. Tex. Const. art. XVI, § 50. The only
debts that may be collected by foreclosure on the homestead are specifically listed in the Texas
Constitution. Inwood North Homeowners' Ass'n v. Harris, 736 S.W.2d 632, 634 (Tex. 1987). 
In order to establish a homestead claim in rural property, a person must: (1) reside on part of the
property; and (2) use the property for the purposes of a home. Fajkus v. First Nat'l Bank, 735
S.W.2d 882, 884 (Tex. App.--Austin 1987, writ denied). Residence on urban land usually
precludes the claim of a rural homestead. Id. However, in Gregory v. Sunbelt Savings, F.S.B.,
835 S.W.2d 155 (Tex. App.--Dallas 1992, writ denied), the Dallas Court of Appeals stated:



The homestead character of property can be established prior to actual occupancy
when the owner intends to improve and occupy the premises as a homestead. 
Preparations for that purpose must be of such a character and have proceeded to
such an extent as to manifest, beyond a reasonable doubt, the intention to complete
the improvements and to reside upon the place as a home.



Id. at 158; see also Simank v. Alford, 441 S.W.2d 234, 237 (Tex. Civ. App.--Austin 1969, writ
ref'd n.r.e.) (stating that a rural homestead may be claimed even before a dwelling is actually
constructed on the land).

 In this case, James has an IQ of 17 and the capacity of an 11-month-old child. He
has resided in the Mexia State School since 1964. Testimony indicates that James has not left the
facility to visit anywhere overnight since at least 1975 and that he has possibly never left the
school. Appellee testified that he believed that James did not even know that he owned any
property.

 Appellee, however, testified that he, as James' guardian, became concerned a few
years ago when there was some talk of closing the Mexia State School. Appellee believed that
in December 1993 he entered into an agreement with Ms. Oglesby of the TDMHMR under which
351 acres would be sold for the benefit of TDMHMR and 100 acres would be set aside for James'
homestead. Appellee had a trailer home, complete with kitchen, bathroom, bedroom, and living
room, placed on James' property. Appellee testified as to his intention that James live on the
property if James is ever denied residential care by either state or federal authorities.

 Because James is incapable of forming the intent necessary to establish a
homestead, appellee established that intent for him and has taken steps such that, if the need ever
arises, James will be able to reside upon the 100 acres, even if he can do so only with the aid of
a permanent caretaker. TDMHMR does not dispute that appellee, in his role as guardian, can
establish a homestead in favor of James. Appellee is neither estopped nor prevented by res
judicata from now applying for a homestead exemption simply because he did not bring up the
homestead issue in the 1987 litigation. In fact, we believe appellee would be considered remiss
in his duties as a guardian had he not now claimed a homestead exemption for James.

 "[T]he courts have always given a liberal construction to the Constitution and
Statutes to protect homestead rights." Lifemark Corp. v. Merritt, 655 S.W.2d 310, 314 (Tex.
App.--Houston [14th Dist.] 1983, writ ref'd n.r.e.); see Tolman v. Overstreet, 590 S.W.2d 635,
637 (Tex. App.--Tyler 1979, no writ). Keeping with this policy of liberal construction and
recognizing the unique situation of the ward in this case, we agree with the trial court's decision
to approve the homestead application setting aside 100 acres for James rural homestead. 
Accordingly, point of error two is overruled.



CONCLUSION


 The judgment of the trial court is affirmed.

 


 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Jones and B. A. Smith

Affirmed

Filed: January 17, 1996

Publish



ion described the property to be sold as 451
acres without excluding acreage for a homestead.

 In response, appellee contends that there is sufficient evidence to support the trial
court's recognition of a 100-acre homestead for James. Appellee argues that, because homestead
rights are not waivable, he maintains the power to establish a homestead on behalf of James.

 The Texas Constitution allows a person to establish a homestead thereby exempting
certain property from forced sale by general creditors. Tex. Const. art. XVI, § 50. The only
debts that may be collected by foreclosure on the homestead are specifically